**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| AMERICAN CHEMICAL SOCIETY ET AL., | Case No. 8:18-cv-03019-GJH |
| Plaintiffs, | |
| v. | |
| RESEARCHGATE GMBH, | |
| Defendant. | |

**DEFENDANT RESEARCHGATE GMBH'S REPLY IN SUPPORT OF ITS MOTION
FOR NOTICE UNDER 17 U.S.C. § 501(B)**

# TABLE OF CONTENTS

I.     INTRODUCTION ..........................................................................................1

II.    ARGUMENT ................................................................................................2

    A.    Section 501(b) was designed to address the specific scenario here: where a lawsuit affects third parties who have an interest in the disputed copyrighted works...........................................................................2

        1.    Plaintiffs fail to cite a single case denying relief under Section 501(b)..........................................................................2

        2.    Plaintiffs misconstrue the legislative history of Section 501(b). ...................3

    B.    The non-corresponding authors have an interest in the disputed works..................6

        1.    There is no dispute that the non-corresponding authors originally had an interest in these works. ..........................................6

        2.    Plaintiffs do not provide writings transferring the copyrights to them signed by the non-corresponding authors. ...........................6

        1.    Plaintiffs' agency theory fails. ..................................................7

        2.    Plaintiffs' own registrations show defects in their ownership of the works...........................................................................10

        3.    Plaintiffs fail to distinguish the relevant case law. ........................12

    C.    The non-corresponding authors' interests will be affected by this proceeding....................................................................14

        1.    Plaintiffs' allegations create an unavoidable conflict with the authors regarding their rights. ........................................15

        2.    Plaintiffs admit that they have taken legal action against the authors impairing their ability to share their own works. ...............16

        3.    These disputes distinguish *Metropolitan Regional.*.......................18

    D.    The burden on Plaintiffs is minimal compared to the stakes of this proceeding....................................................................19

III.    CONCLUSION.............................................................................20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*,
881 F.3d 293 (4th Cir. 2018) ................................................15

*Davis v. Blige*,
505 F.3d 90 (2d Cir. 2007)..............................................8, 9

*Diamond Star Bldg. Corp. v. Freed*,
30 F.3d 503 (4th Cir. 1994) ................................................10

*DSC Commc'ns Corp. v. Pulse Commc'ns, Inc.*,
170 F.3d 1354 (Fed. Cir. 1999)........................................15

*Durham Indus., Inc. v. Tomy Corp.*,
630 F.2d 905 (2d Cir. 1980)..............................................10

*Dynamic Sols., Inc. v. Planning & Control, Inc.*,
No. 86 Civ. 1886, 1987 WL 6419 (S.D.N.Y. Feb. 2, 1987) ................14

*Eden Toys, Inc. v. Florelee Undergarment Co.*,
697 F.2d 27 (2d Cir. 1982)..............................................18

*Getty Images (US) Inc. v. Advernet, Inc.*,
797 F. Supp. 2d 399 (S.D.N.Y. 2011)....................................8

*Kamakazi Music Corp. v. Robbins Music Corp.*,
534 F. Supp. 69 (S.D.N.Y. 1982) ....................................4, 17

*Koufman v. Int'l Bus. Machines Corp.*,
295 F. Supp. 784 (S.D.N.Y. 1969) ......................................9

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
545 U.S. 913 (2005)....................................................15

*Metropolitan Regional Information Systems, Inc. v. American Home Realty Network, Inc.*,
722 F.3d 591 (4th Cir. 2013) ..........................................18

*Motta v. Samuel Weiser, Inc.*,
768 F.2d 481 (1st Cir. 1985).............................................7

*Recht v. Metro Goldwyn Mayer Studio, Inc.*,
580 F. Supp. 2d 775 (W.D. Wis. 2008) ..............................12, 13

*Stafford Trading, Inc. v. Lovely*,
No. 05 C 4868, 2007 WL 1512417 (N.D. Ill. May 21, 2007) ................................13

*Taylor v. Universal Music Corp., Inc.*,
No. CV 13-06412, 2014 WL 12607685 (C.D. Cal. Mar. 10, 2014) ................................13, 14

*Thomas M. Gilbert Architects, P.C. v. Accent Builders & Developers, LLC*,
377 F. App'x 303 (4th Cir. 2010) ................................9

*Union Camp Corp. v. Dyal*,
460 F.2d 678 (5th Cir. 1972) ................................9

*Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.*,
618 F.3d 417 (4th Cir. 2010) ................................10

*van't Rood v. Cty. of Santa Clara*,
113 Cal. App. 4th 549 (Cal. Ct. App. 2003) ................................9

*Whittle v. Brown*,
217 Md. 161 (Md. 1958) ................................7

**Statutes**

17 U.S.C. § 101 ................................11

17 U.S.C. § 103 ................................11

17 U.S.C. § 201 ................................6, 11, 12

17 U.S.C. § 204 ................................7, 18

17 U.S.C. § 204(a) ................................7, 8, 9

17 U.S.C. § 501 ................................2

17 U.S.C. § 501(b) ................................ *passim*

17 U.S.C. § 512 ................................2, 16, 17

Copyright Act of 1976 ................................3, 9, 13

**Other Authorities**

Fed. R. Civ. P. 19 ................................13

H.R. Rep. No. 1476 (1978), *reprinted in* 1976 U.S.C.C.A.N. 5658 ................................4, 5, 17

*Notice and Takedown in Everyday Practice*,
U.C. Berkeley Pub. Law Res. Paper No. 2755628 (2017) ................................16, 17

## I.      INTRODUCTION

Plaintiffs argue no notice is required because Plaintiffs are protecting the academics and scientists whose rights are directly implicated by this case.  But Plaintiffs' true aim is to usurp those rights:  They seek a ruling that would bar researchers from publishing their own scientific papers on their own ResearchGate pages.  Because Plaintiffs' purposes are at odds with those of the authors, it is no surprise that Plaintiffs are fighting to avoid having to disclose the existence of this unprecedented proceeding from the very authors whose rights are at issue.

To prevail in this case, Plaintiffs must prove that researchers who never signed away their rights do not own the copyright in their own articles, and that those researchers therefore infringe Plaintiffs' copyrights when they post their own articles on ResearchGate.  For that to be true, the law requires a signed, written transfer of copyright from all co-authors of the disputed works to Plaintiffs.  That didn't happen.  Yet Plaintiffs argue that they, and not the articles' authors, should be "presumed" to own the copyright—and that Plaintiffs should be able to litigate their claims without so much as notifying the authors that their right to share their own work is at stake.

Despite the centrality of the third-party authors' rights to this case, Plaintiffs argue that merely notifying the authors that their rights are at stake will "prejudice" the authors by "breed[ing] confusion in the scholarly community" and "distracting researchers and scientists from their core mission."  Opp'n Br. at 14.  Indeed, Plaintiffs even suggest that for these authors—including professors, scientists and researchers—merely "being sent legal documents will confuse them" or the authors "may even feel threatened."  *Id.* at 14-15; *see* Compl. ¶ 17.

If the researchers are distracted, it will be by Plaintiffs' efforts to stop them from sharing their own work.  If they feel threatened, it will be by the prospect of losing their copyrights without ever having signed them away.  The Court should deny Plaintiffs' request to impose a

cone of silence around these proceedings and grant ResearchGate's motion.

## II.   ARGUMENT

### A.   Section 501(b) was designed to address the specific scenario here: where a lawsuit affects third parties who have an interest in the disputed copyrighted works.

17 U.S.C. § 501(b) is a simple provision with a simple purpose:

> The court *may* require such owner to serve written notice of the action with a copy of the complaint upon any person shown, by the records of the Copyright Office or otherwise, *to have or claim an interest in the copyright*, and *shall* require that such notice be served upon any person whose *interest is likely to be affected* by a decision in the case.

*Id.* (emphases added).  This provision is designed to protect third parties' rights where a party in copyright litigation has placed their rights in question.  That is what is happening here.  Plaintiffs accuse the authors of copyright infringement and have represented in DMCA takedown notices that those authors' distribution of their own works via ResearchGate is unlawful.  Those authors would inevitably be prejudiced if Plaintiffs' claims were successful.  ResearchGate has not "manufacture[d] a dispute," as Plaintiffs assert.  Opp'n Br. at 2.  The dispute arises from Plaintiffs' contention that Plaintiffs own the authors' work and have the legal right to prevent the authors from sharing it.  The authors have shared their articles on ResearchGate's site; Plaintiffs have challenged their right to do so.  All interested parties should be given a chance to participate if they so choose.

### 1.   Plaintiffs fail to cite a single case denying relief under Section 501(b).

Plaintiffs do not cite a single case in which a court denied notice under Section 501(b).  *See* Opp'n Br. at 9.  They argue instead that no defendant has requested notice under Section 501(b) in a case like this one.  *Id.*  But that is because there has never been a case like this one— where a party claims to own the writings of thousands of third-party authors and seeks to enforce

its claimed ownership rights against the activities of those very authors.

ResearchGate is bringing this motion in response to Plaintiffs' claim that ResearchGate is secondarily liable for direct infringement **by the works' non-corresponding authors**—that is, authors who never signed a writing transferring their copyrights in the works-in-suit to Plaintiffs. This motion is not related to the other claims in the Complaint about actions that ResearchGate allegedly took on its own.  Nor is it related to works that were shared by corresponding authors—as to whom the ownership situation may be more complicated, since they signed a writing purporting to transfer a copyright interest to Plaintiffs.  Instead, it is related only to those works where the alleged infringement resulted from (1) sharing on ResearchGate by an author (2) who is not the "corresponding author" and therefore has not signed a writing transferring away his or her copyright interest.  These authors deserve the chance to defend their rights.

### 2. Plaintiffs misconstrue the legislative history of Section 501(b).

The legislative history of Section 501(b) confirms its application here.  The best explanation of Section 501(b) comes from the Supplementary Report of the Register of Copyrights on a draft of what became the Copyright Act of 1976.  The Register explained:

> Subsection (b) of section 501 represents an effort to deal with a difficult practical problem: how, under a system of divisible copyright, to make it possible for the owner of a particular right to bring an infringement action in his own name alone, and at the same time to insure as far as possible that the owners of other rights which may be affected are notified of the suit and given an opportunity to become parties. As indicated in chapter 3, considerable concern has been expressed about the dangers to copyright owners when each of the exclusive rights under a copyright can be owned and defended separately in court. An example was given of **the owner of an exclusive right who discovers too late that, as the result of a judgment in an action brought by the owner of another exclusive right in a remote jurisdiction, he can no longer enforce his rights** because the defendant is judgment proof, because of the doctrines of *res judicata*, collateral estoppel, etc.

3

H. Comm. On the Judiciary, 89th Cong., 1st Sess., Copyright Law Revision: Supplemental Report of Register of Copyrights on General Revision of U.S. Copyright Law: 1965 Revision Bill, Copyright Law Revision Part 6 (Comm. Print 1965) ("Register's Report") (emphasis added), *available at* https://books.google.com/books?id=65AYAAAAMAAJ&pg=PA131.

This is exactly what will happen if Plaintiffs prevail in this case. Plaintiffs and the non-corresponding authors both have claims to copyright in these works. These claims are in conflict; Plaintiffs argue that the non-corresponding authors have transferred their rights to Plaintiffs and accuse the authors of violating the law (by bringing contributory infringement claims that depend on direct infringement by the non-corresponding authors). *See* Opening Br. at 11; *see also infra* at II.C.1. A judgment in favor of Plaintiffs in this district—"a remote jurisdiction" for many of the thousands of authors at issue—would mean the authors could "no longer enforce" the copyright in their works. *Id.* It would also mean that the authors could no longer publish—or authorize others to publish—their own work. The notice provision is designed to prevent these authors from "discover[ing] too late" that their rights may be affected. *Id.* This means they should be notified as soon as possible to give them time to make an informed decision about whether to intervene or otherwise participate.

Plaintiffs appear to agree that "the intent [of Section 501(b) was] to avoid a multiplicity of suits by 'insuring to the extent possible that the owners whose rights may be affected are notified and given a chance to join the action.'" *Kamakazi Music Corp. v. Robbins Music Corp*., 534 F. Supp. 69, 74 (S.D.N.Y. 1982) (quoting H.R. Rep. No. 1476, at 159 (1978), *reprinted in* 1976 U.S.C.C.A.N. 5658, 5775). Plaintiffs, however, are wrong to read into this legislative history limitations and conditions on Section 501(b) that do not exist.

First, Plaintiffs argue that notice is inappropriate because "Plaintiffs are not exclusive

licensees of the holder of the copyrights but own the copyrights themselves via assignment." Opp'n Br. at 13.  But neither the statute nor the legislative history says anything about "exclusive licensees."  The statute refers to an "owner" of copyright—which Plaintiffs claim to be.  *See* 17 U.S.C. § 501(b).  And the legislative history, too, refers to the party in Plaintiffs' position as "the owner of a particular right."  Register's Report at 131.  Plaintiffs invent this "exclusive licensee" limitation out of whole cloth.  And indeed, Plaintiffs' proposed limitation presupposes that they are the sole owners of copyright in the authors' articles.  But the need to resolve the ownership question is exactly why notice should be granted.

Next, Plaintiffs argue that "Section 501(b) is designed to give all potential ***plaintiffs*** an opportunity to participate in a single action."  Opp'n Br. at 13-14 (emphasis added).  But nothing limits Section 501(b)'s application to "potential plaintiffs."  The text refers to "person[s]" who "have or claim an interest in the copyright."  17 U.S.C. § 501(b).  The legislative history refers to "owners whose rights may be affected."  H.R. Rep. No. 1476.  There is no support, in the text or elsewhere, for limiting Section 501(b) to copyright holders who wish to ***enjoin*** the dissemination of their writings.  Instead, the statute embraces all third parties who "have or claim an interest in the copyright," whether they would seek to stop dissemination or whether they would seek to preserve their own freedom to disseminate their own work.  Many authors who are notified may decide not to participate in this action.  But one or more authors who disagree with Plaintiffs could choose to intervene or otherwise participate.  Authors cannot decide whether they want to participate in this action, however, unless they know it exists.

This lawsuit not only "may" affect the interests of out-of-court third parties in the copyrights of the disputed works, *see* H.R. Rep. No. 1476, at 159, but is likely to affect those interests, *see* 17 U.S.C. § 501(b).  The statute requires that those authors "shall" be notified.  *Id.*

**B.      The non-corresponding authors have an interest in the disputed works.**

Plaintiffs' second broad attack on the notice requirement is that ResearchGate has "not met its burden of providing evidence" that non-corresponding authors have a copyright interest. Opp'n Br. at 4.  But this case is at the pleadings stage; discovery has barely commenced, and because Plaintiffs have yet to produce documents, the form agreements published by Plaintiffs are all there is to rely on.  Based on those forms—and, despite the opportunity to do so in their Opposition, Plaintiffs have not said that they did not use their own forms—the non-corresponding authors are third parties who "have or claim an interest" in the copyright.[1]  Nor have Plaintiffs suggested that any non-corresponding author signed any writing, either with the Plaintiffs or with other co-authors.  Section 501(b) is about giving those non-corresponding authors an opportunity to intervene before a final judgment that may affect their rights.

**1.      There is no dispute that the non-corresponding authors originally had an interest in these works.**

Plaintiffs do not dispute that the non-corresponding authors *at one time* had an interest in the works at issue.  "Copyright in a work protected under the title vests initially in the author or authors of the work."  17 U.S.C. § 201(a).  Thus, in order to show that Plaintiffs own the entirety of the copyright, and that the non-corresponding authors no longer have a copyright interest that would justify notice, Plaintiffs would need to show that each non-corresponding author transferred away his or her interest, and that one of the Plaintiffs now owns that interest.

**2.      Plaintiffs do not provide writings transferring the copyrights to them signed by the non-corresponding authors.**

"A transfer of copyright ownership . . . *is not valid* unless an instrument of conveyance,

---

[1]  In fact, in their Opposition, Plaintiffs argue that "[a]ll available evidence before the Court corroborates [certain] terms in the publication agreements," suggesting that they are not disputing that these are the operative agreements.  *Id*. at 6.

or a note or memorandum of the transfer, *is in writing and signed* by the owner of the rights conveyed or such owner's duly authorized agent."  17 U.S.C. § 204(a) (emphasis added).  And "[i]f a plaintiff is not the author of the copyrighted work then he or she must establish a proprietary right through the chain of title in order to support a valid claim to the copyright." *Motta v. Samuel Weiser, Inc*., 768 F.2d 481, 484 (1st Cir. 1985).  With respect to the supposed conveyance to Plaintiffs of the copyright interests initially owned by the non-corresponding authors, Plaintiffs have not provided any documents "in writing and signed by the owner of the rights conveyed," 17 U.S.C. § 204(a), and have not alleged that any such documents exist.

### 1.    Plaintiffs' agency theory fails.

The only remaining possibility for there to have been a valid transfer under Section 204(a) is that, while the non-corresponding authors never signed a document conveying any rights to Plaintiffs, the corresponding author did sign something, and did so acting as the "duly authorized agent" of each of the non-corresponding authors.  This appears to be Plaintiffs' sole theory.  *See* Opp'n Br. at 6 ("[T]he corresponding author acts as the duly authorized agent for all co-authors.").  The hole in Plaintiffs' agency theory is that they have no *writing* indicating that the corresponding authors were authorized to act as their agents.  Instead, they rely on what they say are the uncorroborated representations of the supposed agents themselves.  *Id*. ("[B]y signing the publication agreement, the corresponding author represents that he or she has precisely the authority § 204(a) requires.").  This is insufficient for several reasons.

First, and most simply, all that Plaintiffs claim to have is a representation from the corresponding author—the putative agent—that she possesses the authority to transfer her co-authors' copyrights.  But "[i]t is well settled that 'an agent's own declarations are insufficient to establish his agency.'"  *Whittle v. Brown*, 217 Md. 161, 167 (Md. 1958) (citation omitted).  There is no evidence of any statement—oral or in writing—by the non-corresponding authors

(the putative principals) suggesting that they appointed the corresponding author as their agent. In the absence of such evidence, Plaintiffs have not met their burden to establish that they received a transfer of the entire copyright. *See, e.g.*, *Getty Images (US) Inc. v. Advernet, Inc.*, 797 F. Supp. 2d 399, 416 (S.D.N.Y. 2011) ("[T]o have a valid copyright ownership of [a work with several joint authors] . . . the plaintiff must demonstrate that . . . both authors . . . conveyed exclusive rights to it, which the plaintiff failed to do. Thus, the plaintiff failed to establish ownership of a valid copyright . . . .").

Second, even if there were some oral agreement between the putative principal and the putative agent that the copyrights could be transferred, that would not satisfy the writing requirement of Section 204(a). That is because a co-owner "may not . . . convey the interests of his fellow co-owners without their express ***written*** consent . . . ." *Davis v. Blige*, 505 F.3d 90, 99 (2d Cir. 2007) (emphasis added). Plaintiffs rely on this case in their Opposition, *see* Opp'n Br. at 5, but argue in a footnote that this statement is dicta. It is not. The key question in *Blige* was whether unwritten communications could transfer copyrights. *See, e.g.*, *Blige*, 505 F.3d at 107-08. The result in *Blige* would have been different if the alleged 1998 oral agreement could have resulted in a valid transfer of copyright—and on Plaintiffs' theory here, it could have: Chambliss, the alleged third-party co-author, could have ***orally*** made the defendant, Miller, his "authorized agent," and Miller could have executed a ***unilateral writing*** transferring Chambliss's interests to himself. That sort of blatant end-run around the writing requirement of Section 204(a) is exactly what Plaintiffs say happened here. The Second Circuit did not need to explain that one cannot circumvent the writing requirement by the oral creation of an agency relationship, and the execution of a writing by the putative transferee as "agent" for the transferor. That does not make its unequivocal statement "dicta"; instead, it highlights how far

afield Plaintiffs' theory goes.

The unequivocal statement in *Davis* is an application of the "equal dignities rule," which holds that one cannot circumvent a writing requirement by ***orally*** creating an agency relationship and pointing to the agent's writing as satisfying the writing requirement.

The equal dignities rule is simple:  "Where the agreement to create an agency is express, it 'may be oral, ***except*** where the agency is to enter into a contract required by law to be in writing, in which case ***the authorization must be in writing***[.]'"  *van't Rood v. Cty. of Santa Clara*, 113 Cal. App. 4th 549, 571 (Cal. Ct. App. 2003) (emphasis added) (citation omitted) (applying California law); *see also, e.g.*, *Koufman v. Int'l Bus. Machines Corp.*, 295 F. Supp. 784, 789 (S.D.N.Y. 1969) (applying New York law to hold that an agent's authority to enter into a contract required by law to be in writing must itself be in writing); *Union Camp Corp. v. Dyal*, 460 F.2d 678, 686 (5th Cir. 1972) (same under Georgia law).  This rule applies to many and perhaps all of the non-corresponding authors in this case.[2]  It holds that the corresponding author cannot be the non-corresponding author's agent unless there is a signed writing authorizing the corresponding author to act because copyright transfers are a "contract required by law to be in writing."  *van't Rood*, 113 Cal. App. 4th at 571.

Plaintiffs have provided no evidence of the purported agents' authority.  Without it, their

---

[2]  Because this motion aims only to require Plaintiffs to notify these authors, not to resolve the legal agency question, we do not brief here all fifty states' law on agency.  The point is that Plaintiffs' assertion that the corresponding authors signed a form saying they were the agents of the non-corresponding authors does not sweep away all questions about ownership, such that there would be no need to notify the non-corresponding authors of this lawsuit.  Indeed, one potential outcome is not the application of potentially varying state law, but the imposition of a uniform federal standard:  The Fourth Circuit has expressly reserved the question whether issues of contract law closely connected to the policies of the Copyright Act are instead questions of federal law.  *See Thomas M. Gilbert Architects, P.C. v. Accent Builders & Developers, LLC*, 377 F. App'x 303, 307 (4th Cir. 2010) ("[W]e need not resolve the source-of-law issue to decide the case before us.").  If federal law applies, there would presumably be a uniform application of the equal dignities rule, in light of the federal policy expressed in Section 204(a) that agreements affecting ownership of a copyright must be in writing.

theory fails.  And, indeed, notifying non-corresponding authors of this action would aid, not impede, the resolution of any factual disputes about the corresponding authors' authority.

### 2. Plaintiffs' own registrations show defects in their ownership of the works.

Finally, Plaintiffs attempt to hide behind the presumption of ownership provided by their copyright registrations, since Plaintiffs unsurprisingly listed themselves—and not the authors—as the copyright claimants.  But as the Fourth Circuit has recognized, "this presumption is fairly easy to rebut because the Copyright Office tends toward cursory issuance of registrations." *Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.*, 618 F.3d 417, 430 (4th Cir. 2010).  Indeed, "a certificate of registration creates no irrebuttable presumption of copyright validity.  Where other evidence in the record casts doubt on the question, validity will not be assumed." *Diamond Star Bldg. Corp. v. Freed*, 30 F.3d 503, 505 n.1 (4th Cir. 1994) (quoting *Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 908 (2d Cir. 1980)).  Here, there is "other evidence" that casts doubt on the proposition that the non-corresponding authors transferred away their rights in a way that prevented them from sharing their own work via ResearchGate, and it is contained in Plaintiffs' Complaint:  The non-corresponding authors are alleged to have acted inconsistently with having done so, by sharing their own work via ResearchGate.  That is more than enough to cast at least some doubt on any presumption.

Furthermore, even a cursory survey of the registration information shows that the registrations do not apply as broadly as Plaintiffs claim.  For example, many of the Elsevier registrations identified in the Complaint appear to be for compilations.[3]  *See* Decl. of Joseph C. Gratz submitted herewith ("Gratz Decl.") Ex. 1, registration record for Elsevier Copyright

---

[3] ResearchGate has not finished an exhaustive survey of the relevant copyright registration information, but a random sample of the registration records for 58 registrations revealed that all 58 appeared to be either in compilations or collective works.

Registration No. TX0007708971 ("Authorship: compilation"); *see also* Exs. 2-3 (same).   But copyright in a compilation is not the same as copyright in the component works.   A compilation is "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship."   17 U.S.C. § 101.   Accordingly, the copyright in a compilation:

> extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material.  The copyright in such work is independent of, and does not affect or enlarge the scope, duration, ownership, or subsistence of, any copyright protection in the preexisting material

17 U.S.C. § 103(b).   Thus, where Plaintiffs have a compilation copyright registration, that registration creates a presumption that they own a copyright in the selection and arrangement of preexisting articles gathered into issues of their journals.   In many cases, the registrations say nothing about ownership of the underlying third-party articles.   And because only individual articles, and not entire issues, are alleged to have been copied here, there would be no basis for a claim of infringement of the compilation copyright.

Similarly, the registrations identified by ACS appear to be for "collective works."   *See* Gratz Decl. Ex. 4, registration record for ACS Copyright Registration No. TX0008236476 ("Authorship: collective work"); *see also id.* Exs. 5-6 (same).   "A 'collective work' is a work, such as a periodical issue, anthology, or encyclopedia, in which a number of contributions, constituting separate and independent works in themselves, are assembled into a collective whole."   17 U.S.C. § 101.   But "[c]opyright in each separate contribution to a collective work is distinct from copyright in the collective work as a whole, and vests initially in the author of the contribution."   17 U.S.C. § 201(c).

Because the copyright registrations are for compilations or collective works, and not for the underlying articles, the copyright registrations give rise to no presumption that Plaintiffs own

the articles themselves.  To the contrary, Congress created a limiting presumption with respect to collective works, to deal with the situation where (as here) a third-party article was submitted for inclusion in a collective work:  "In the absence of an express transfer of the copyright or of any rights under it, the owner of the copyright in the collective work is presumed to have acquired *only* the privilege of reproducing and distributing the contribution as part of that particular collective work" and related rights.  *Id.* (emphasis added).  Of course, that statutory presumption points in the opposite direction of Plaintiffs' claimed presumption.  Under Section 201(c), Plaintiffs should be presumed to have received only the privilege of printing the articles in their journals, not the entire copyright.  Under Section 201(c), the non-corresponding authors to whom notice is requested are presumed to have retained their copyrights.

Accordingly, the Court cannot simply presume that Plaintiffs own the copyright in all of the articles written by the non-corresponding authors that were published in Plaintiffs' journals. The non-corresponding authors should be given notice, so that they can protect their rights in the work they submitted.

### 3.  Plaintiffs fail to distinguish the relevant case law.

Nor do Plaintiffs effectively distinguish the relevant case law.  First, Plaintiffs distinguish *Recht v. Metro Goldwyn Mayer Studio, Inc*., 580 F. Supp. 2d 775, 784-85 (W.D. Wis. 2008), because it required notice to only one coauthor, and there was no evidence of a dispute of ownership of the copyright with that coauthor.  *See id.* at 784-85.  In *Recht*, the Court ordered notice sent to a screenplay's coauthor because his authorship made him the "presumptive[4] 'co-owner'" and therefore constituted an interest likely to be affected by the lawsuit.  *Id.*

---

[4] Plaintiffs complain about ResearchGate's use of the word "presumed" in its opening brief, but omit that ResearchGate was simply using the phrasing used by the court in *Recht*.  *Compare* Opp'n Br. at 3 *with* ResearchGate's Opening Br. at 9-10.

But there was only one coauthor to be notified in *Recht* because there was only one work in suit.  Here, Plaintiffs (not ResearchGate) decided to accuse thousands of people of copyright infringement.  If anything, the number of people potentially affected by this case is all the more reason to send them proper notice.  Similarly, that Plaintiffs dispute ownership of the works is a greater reason to notify the non-corresponding authors, for it makes it even more probable that their "interest is likely to be affected by a decision in the case."  17 U.S.C. § 501(b).

Second, Plaintiffs fail to distinguish the Rule 19 joinder cases cited by ResearchGate.  Plaintiffs are correct that joinder of all co-owners is not mandatory under the Copyright Act of 1976.  But, as explained both above and in Plaintiffs' Opposition, the notice provision was created as a replacement for the 1909 Act's "onerous joinder requirement."  Opp'n Br. at 12.  That joinder has been ordered in similar cases supports, not detracts, from the necessity of sending notice here:  The purpose of the notice provision section is to ensure that removing this "onerous" joinder requirement does not prejudice third parties with an interest in the copyright.

ResearchGate's cases show that similar parties to the non-corresponding authors here were necessary parties to other lawsuits, and therefore exactly the type of parties that should be noticed.  In *Stafford Trading*, the third-party bank was a necessary party because it was "currently using" the disputed copyrighted works and would be adversely affected by a declaration that the plaintiff was the true owner of the copyright.  *Stafford Trading, Inc. v. Lovely*, No. 05 C 4868, 2007 WL 1512417, at *12 (N.D. Ill. May 21, 2007).  So it is here:  The non-corresponding authors were "using" the disputed works on their own ResearchGate pages until Plaintiffs sent takedown notices that forced ResearchGate to remove the works.

In *Taylor* (as in *Recht*), the work's co-author was a necessary party because the complaint disclosed the potential conflict in ownership, and resolution of the lawsuit may have adversely

affected that co-authors' rights. *Taylor v. Universal Music Corp., Inc.*, No. CV 13-06412, 2014 WL 12607685, at *4 (C.D. Cal. Mar. 10, 2014). Plaintiffs' Complaint also exposes a potential ownership conflict, by accusing the non-corresponding authors of copyright infringement.

And in *Dynamic Solutions*, the third party licensed the disputed works to the defendant and represented that he wished to be joined after his attorney attended hearings in the case; the court found joinder was proper because a ruling that the defendant infringed could impede his interest in the copyright. *Dynamic Sols., Inc. v. Planning & Control, Inc.*, No. 86 Civ. 1886, 1987 WL 6419, at *4-*5 (S.D.N.Y. Feb. 2, 1987). The non-corresponding authors here should be notified so that they have this opportunity to attend hearings and decide whether they wish to intervene. *See* 17 U.S.C. § 501(b) ("The court . . . shall permit the intervention, of any person having or claiming an interest in the copyright."). As the parties who uploaded the works to ResearchGate, thereby granting an implied license to ResearchGate to host the works, they are in the exact procedural posture as the third party in *Dynamic Solutions*.

None of this is to say the Court needs to make a final determination on any of these issues now. That would be inappropriate at the pleadings stage. But Plaintiffs' position would require the Court to rule that co-authors who have not signed any agreement with Plaintiffs have no copyright interest, based on a presumption that is easily overcome. Instead, the Court should exercise its discretion to notify these authors of this lawsuit, because they "have or claim an interest in the copyright."

## C. The non-corresponding authors' interests will be affected by this proceeding.

The preceding section addressed why this Court should exercise its discretion to order notification of non-corresponding authors. But notice is also appropriate because non-corresponding authors' interests will likely be affected by this proceeding. 17 U.S.C. § 501(b). Notice on that basis is not discretionary—it is mandatory. *Id.* Plaintiffs' allegations and

admissions in their Opposition show that these interests will inevitably be affected.

> **1.     Plaintiffs' allegations create an unavoidable conflict with the authors regarding their rights.**

Plaintiffs' contributory infringement allegations depend on allegations of direct infringement against the non-corresponding authors.   "An act of direct infringement is a necessary predicate for any derivative liability . . . absent direct infringement, there can be no contributory infringement."   *DSC Commc'ns Corp. v. Pulse Commc'ns, Inc.*, 170 F.3d 1354, 1359 (Fed. Cir. 1999); *see also BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 881 F.3d 293, 307 (4th Cir. 2018) ("One infringes contributorily by ***intentionally*** inducing or encouraging direct infringement.") (quoting *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005)).

Specifically, Plaintiffs' allegations about the display of articles uploaded by the articles' authors to ResearchGate depend on direct infringement claims against those same authors.   *See, e.g.*, Compl.¶ 37 ("ResearchGate also prompts specific ***authors*** . . . to upload copies of specific PJAs"); *id*. ¶ 38 ("[T]he 'Request full-text' feature on each publication page allows the user to ask the ***author*** to upload a copy of the PJA.   When the author fulfills one of these requests . . . the article is automatically posted publicly on the RG Website.") (emphases added).

Given these accusations, Plaintiffs' argument that "ResearchGate manufactures a dispute between publishers and authors where none exists" rings hollow.   Opp'n Br. at 2.   Plaintiffs' own allegations in the Complaint create a dispute with these authors.   Plaintiffs cannot succeed on their claims without also successfully proving these authors directly infringed the works-in-suit—works that were created by the same authors and for which Plaintiffs have no signed written assignment with the authors they now accuse of infringement.

15

2.      **Plaintiffs admit that they have taken legal action against the authors impairing their ability to share their own works.**

Indeed, as Plaintiffs explain in their Opposition, they have ***already*** taken legal action against the non-corresponding authors; they sent takedown notices under Section 512 of the Digital Millennium Copyright Act ("DMCA") alleging that materials posted by those authors infringe Plaintiffs' copyrights and must be removed from the authors' pages.  Opp'n Br. at 9.  In response, ResearchGate acted expeditiously to remove the contested works.  Given the ongoing legal dispute over these authors' postings, Plaintiffs cannot credibly suggest that they share a unity of interest with the authors, or that the authors are "unlikely to be affected."

Plaintiffs point to the DMCA's counter notification provision, *see* 17 U.S.C. 512(g)(3), and make much of the fact that few if any of the authors have located and taken advantage of that provision.  But ResearchGate has received "messages from users objecting to the removal of articles they have uploaded," even though these users have not filed formal counter notifications meeting the strictures of Section 512(g)(3).  Opening Br. at 14; Monahan Decl. ¶ 9.

As scholars Jennifer M. Urban, Joe Karaganis, and Brianna L. Schofield explain in their seminal survey and analysis of the real-world functioning of the DMCA, *Notice and Takedown in Everyday Practice*, U.C. Berkeley Pub. Law Res. Paper No. 2755628 (2017), the counter notice procedure is "a dead letter," which is "impractical and rarely used." *Id.* at 44.  Indeed, "[a]ll [online service providers ("OSPs")] and at least one rightsholder agreed that the counter notice procedure's practical ability to protect targets is limited." *Id.*  They explain that "the actual use of counter notices is extremely infrequent," and that "only one respondent among both service providers and rightsholders reported receiving more than a handful per year." *Id.*

The reasons for this vary, but the predominant theme is that sending a counter notice is unlikely to be effective and is an invitation to be named in a lawsuit.  Indeed, the result of

sending a counter notice is that the OSP must forward it to the party who sent the original notice. The party who sent the notice then has ten business days to determine whether or not to bring a federal lawsuit against the party who sent the counter notice.  17 U.S.C. § 512(g)(2)(A-C).  The OSP itself must replace the material "not less than 10, nor more than 14, business days following receipt of the counter notice" unless the original party who sought removal of the material informs the OSP that it has sought legal action against the counter-noticing party.  This creates a tremendous risk to the party who sends the counter notice, who often "has 'little or no knowledge of copyright law,' and little capacity to make informed estimates of the risks attendant on filing a counter notice[.]"  *Notice and Takedown in Everyday Practice* at 44.

ResearchGate also allows for the possibility that some or even many authors may not have sent counter notices because they are unaware of their retained rights in their works.  Some may be surprised to receive a notice suggesting that they still may have an ownership right in their work, and may have an opportunity to object to Plaintiffs' actions.  This matters not. Copyright law makes clear that a written agreement with one co-author is insufficient to transfer other co-authors' interests.  All Plaintiffs have pointed to is a written agreement with one co-author.  The absence of a written agreement with the non-corresponding co-authors justifies notice to those co-authors, regardless of whether they have sent counter notices.

In any event, the volume of takedown notices sent by Plaintiffs and the ineffectiveness of the counter notice system is all the more reason to use Section 501(b) in this case in order "to avoid a multiplicity of suits by 'insuring to the extent possible that the other owners whose rights may be affected are notified and given a chance to join the action.'"  *Kamakazi Music Corp.*, 534 F. Supp. at 74 (quoting H.R. Rep. No. 94-1476, at 159 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5775).  Plaintiffs cannot argue that it would be better to have thousands of individual suits

under the DMCA's notice and takedown procedures, rather than a single suit resolving the disputes altogether. Plaintiffs' proposal is the precise scenario that Section 501(b) is designed to prevent. And because Plaintiffs are already in conflict with these authors over their rights, these authors' rights are "likely to be affected by this proceeding." Notice, therefore, is mandatory.

### 3.    These disputes distinguish *Metropolitan Regional*.

These disputes show why Plaintiffs' citation to *Metropolitan Regional Information Systems, Inc. v. American Home Realty Network, Inc.*, 722 F.3d 591 (4th Cir. 2013) is inapposite. Plaintiffs cite this case for the proposition that "where the copyright author appears to have no dispute with its assignee on this matter . . . it would be anomalous to permit a third party infringer to invoke § 204(a)'s signed writing requirement against the assignee." *Id.* at 600 (quoting *Eden Toys, Inc. v. Florelee Undergarment Co.*, 697 F.2d 27, 36 (2d Cir. 1982)). First, Plaintiffs incorrectly describe this as the case's holding. But the Fourth Circuit was describing the holding of *Eden Toys*, a Second Circuit case, before noting that the question of third-party standing under Section 204 was not raised by the parties. The Fourth Circuit instead resolved the case by holding that there ***was*** a signed writing. *Id.* at 600-01, 603.

The Court need not decide that issue now, however, because even under Plaintiffs' reading, *Metropolitan Regional* is distinguishable. Under Plaintiffs' interpretation, *Metropolitan Regional* applies "where the copyright author appears to have no dispute with its [putative] assignee on this matter." But there is a dispute here: Plaintiffs' contributory infringement claim relies on finding the authors committed ***direct copyright infringement***, and Plaintiffs have already taken action, in the form of takedown notices, against those authors.

Even if *Metropolitan Regional* did apply, that would be even more reason to notify the authors. Plaintiffs seek to bar ResearchGate from defending the authors' interests; under Plaintiffs' reading, the only people with standing to defend the authors' rights are the authors

themselves.  The authors should be notified so that they have the opportunity to do so.

**D.  The burden on Plaintiffs is minimal compared to the stakes of this proceeding.**

Finally, Plaintiffs complain about the burden of notifying the authors.  But nothing in the statute requires (or, in the case of mandatory notice, permits) the balancing of burden against the need for the notice.  Regardless, any burden is minimal compared to the stakes of this proceeding, where the rights of thousands of authors are at stake.

First, what burden there is derives from Plaintiffs' own choices.  Plaintiffs made a business decision (at least in many cases) to obtain a written assignment from only one author.  This may have saved them time and money in the short term, but it has left their copyright ownership rights in question.  Any burden now arises from Plaintiffs taking a calculated risk not to obtain a written transfer from all co-authors in the first instance.  Indeed, that Plaintiffs have never communicated with the authors over whose work they are now asserting ownership is more reason, not less, that these authors should be notified.

Second, Plaintiffs chose to bring suit with respect to thousands of articles (rather than a bellwether case about a smaller group).  Plaintiffs cannot bring allegations with respect to over three thousand articles, and then complain that the scope of the case makes contacting a subset of those articles' authors too burdensome.

Third, Plaintiffs overstate the burden here.  The authors to be notified are not nameless users hiding behind online pseudonyms:  They are academics and scientists who are known in the research community.  Plaintiffs already have their names (which appear at the top of each article); most, if not all, will have contact information posted to their LinkedIn pages, university profiles, or employers' webpages.

Notwithstanding the minimal burden involved here, and the fact that the burden is of

19

Plaintiffs' own making, ResearchGate is happy to simplify the notice process by stipulating that service of the notice via email, in a form mutually agreed by the parties and approved by the Court, will be sufficient. ResearchGate is also willing to meet and confer with Plaintiffs regarding any other proposed reasonable simplifications Plaintiffs may suggest, and of course will accede to any limitations the Court deems necessary.

## III.     CONCLUSION

Because the non-corresponding authors' interests are likely to be affected by this proceeding, ResearchGate respectfully requests that the Court order Plaintiffs to notify these authors pursuant to 17 U.S.C. § 501(b).

Dated:  April 4, 2019                           Respectfully submitted,

By:   */s/ Joseph C. Gratz*
      Mark A. Lemley (*Pro Hac Vice*)
      Joseph C. Gratz (*Pro Hac Vice*)
      Allyson R. Bennett (*Pro Hac Vice*)
      Aaron J. Benmark (*Pro Hac Vice*)
      **DURIE TANGRI LLP**
      217 Leidesdorff Street
      San Francisco, CA  94111
      Telephone:     415-362-6666
      Facsimile:     415-236-6300
      mlemley@durietangri.com
      jgratz@durietangri.com
      abennett@durietangri.com
      abenmark@durietangri.com

      Toyja E. Kelley (Bar No. 26949)
      Jillian K. Walton (Bar No. 20144)
      **SAUL EWING ARNSTEIN & LEHR LLP**
      500 E. Pratt Street, Suite 900
      Baltimore, MD 21202-3133
      Telephone:     410-332-8600
      Facsimile:     410-332-8862
      Toyja.Kelley@saul.com
      Jillian.Walton@saul.com

      **Attorneys for Defendant**
      **RESEARCHGATE GMBH**

20

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 4, 2019 the within document was filed with the Clerk of the

Court using CM/ECF which will send notification of such filing to the attorneys of record in this

case.

*/s/ Tovia E. Kelley*
Tovia E. Kelley