**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | |
|---|---|
| **AMERICAN CHEMICAL SOCIETY, et al.,** | * |
| **Plaintiffs,** | * |
| v. | *     Case No.: GJH-18-3019 |
| **RESEARCHGATE GMBH,** | * |
| **Defendant.** | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

Plaintiffs American Chemical Society ("ACS") and Elsevier Inc., Elsevier Ltd, and Elsevier B.V. (collectively, "Elsevier") allege that Defendant ResearchGate GmbH engages in various forms of copyright infringement when it disseminates peer-reviewed articles published and owned by Plaintiffs' academic journals. Pending before the Court is Defendant's Motion for Notice pursuant to 17 U.S.C. § 501(b) in which Defendant requests that the Court order Plaintiff to serve certain authors with notice of this suit. ECF No. 10. In support of that motion, Defendant claims that when Plaintiffs' publications appear on Defendant's website, it is often because a co-author who has not personally signed an agreement with Plaintiffs has uploaded the material. In this context, Defendant argues that Plaintiffs must serve these co-authors with § 501(b) notice because the co-authors "have an interest" in the copyrights asserted by Plaintiffs and the co-authors' rights are "likely to be affected" by the outcome. Plaintiffs filed an opposition, ECF No. 19, arguing that Defendant has not met its burden to show that any authors have a current legal interest in the copyrights at issue because even where co-authors did not personally sign an agreement with Plaintiffs, their duly authorized agents signed on their behalf. A hearing was held

1

on June 10, 2019. ECF No. 28. For the following reasons, Defendant's Motion for Notice will be denied.

## I.     BACKGROUND[1]

Plaintiff ACS is a professional and scientific society. ECF No. 1 ¶ 2. It publishes over 50 peer-reviewed scientific journals, primarily in the field of chemistry and related disciplines. *Id.* Plaintiff Elsevier is a multimedia publishing company. *Id.* Elsevier publishes hundreds of thousands of articles annually in the over 2,500 peer-reviewed journals it maintains. *Id.* Defendant ResearchGate is an online professional network for scientists. ECF No. 10-2 ¶ 2. Scientists may sign up for an account with ResearchGate, create a profile, ask questions of other scientists, and upload articles. *Id.*

When Plaintiffs accept articles for publication, the articles' authors transfer copyright ownership to Plaintiffs through a signed written agreement. ECF No. 1 ¶ 21. Publication agreements generally assign article copyrights to the publisher such that the completed, peer-reviewed article usually cannot be posted publicly by anyone else. ECF No. 1 ¶ 41. Plaintiff attaches to their Complaint a list of over 3000 relevant articles for which, by way of signed written agreement with the authors, they are the copyright owners or owners of exclusive rights. *Id.*; ECF No. 1-1. Plaintiffs have registered all the publications at issue with the United States Copyright Office. ECF No. 1 ¶ 21. Plaintiffs allege that Defendant uses its website to disseminate unauthorized copies of Plaintiffs' peer-reviewed journal articles. ECF No. 1 ¶ 3.

According to Defendant, however, for articles written by co-authors, Plaintiffs often only have one of the articles' authors (i.e. the "corresponding author") sign the publication agreement.

---

[1] Although neither party has provided legal authority indicating whether the Court is limited to allegations in the pleadings when deciding this motion, both sides have pointed to evidence outside of the pleadings. Thus, this background section cites to evidence attached to Defendant's motion as well as facts alleged in the Complaint.

ECF No. 10-1 at 8. In support of this fact, which is not alleged in Plaintiffs' Complaint, Defendant points to sample agreements posted on Plaintiffs' websites. *Id.* A sample agreement posted on Plaintiff Elsevier's website requires the corresponding author to confirm that she is "one author signing on behalf of all co-authors of the manuscript." ECF No. 10-5. The corresponding author is required to agree that "I have informed the co-author(s) of the terms of this Journal Publishing Agreement and that I am signing on their behalf as their agent, and I am authorized to do so." *Id.* at 4. Similarly, a sample form Plaintiff ACS uses for most of its journals states that "[t]he Corresponding Author or designee below, with the consent of all co-authors, hereby transfers to the ACS the copyright ownership in the referenced Submitted Work including all versions in any format now known or hereafter developed." ECF No. 10-7 at 2.

Even as Defendant offers some evidence of Plaintiffs' standard practices, it is not clear how often a corresponding author signed a copyright agreement on behalf of a co-author in the particular instances relevant to this suit. Defendant asserts that 60 percent of the publications relevant to this action "may have been uploaded to ResearchGate by an author who was not the corresponding author." ECF No. 10-1 at 16. Defendant obtained this number by comparing the author who uploaded the articles listed in Plaintiffs' Complaint with the author whose contact information was listed on Plaintiffs' website and noting when there was no overlap. ECF No. 10-2 ¶ 13. However, Defendant sometimes copies articles from authors' personal websites, meaning a co-author may not have uploaded their article to Defendant's website. ECF No. 1 ¶ 31. It is unclear from Defendant's "preliminary analysis" how many of the articles at issue were actually uploaded by co-authors versus taken from a co-author's website or sourced by one of the other methods described in the Complaint. *See id.* Further, Plaintiff alleges that Defendant misleads users into uploading articles by misinforming them about how the articles will be used. *Id.* ¶¶

3

40–41. Additionally, it is not clear from the record or Defendant's motion whether it believes all of the co-authors that uploaded material to Defendant's website—or some other number of co-authors—believed that they did not actually transfer their ownership interest to Plaintiffs.

The "copyright" section of Defendant's website states that ResearchGate "respect[s] the intellectual property rights of others and ask[s] that [users] do the same." ECF No. 10-2 ¶ 5; ECF No. 10-3 at 2. Defendant advises authors that, while ResearchGate allows them to store or share their work (both publicly and privately), "it's important that [they] check *in advance* that [they] have the necessary rights to do so." ECF No. 10-3 at 2 (emphasis in original). Prior to uploading an article to ResearchGate, authors must check a box stating "I have reviewed and verified each file I am uploading. I have the right to share each file publicly, and agree to the Upload Conditions." ECF No. 10-2 ¶ 6.

ResearchGate also has a notice and takedown procedure for responding to notices of claimed copyright infringement submitted by copyright owners, as required under § 512(c) of the Digital Millennium Copyright Act ("DMCA"). *Id.* ¶ 7; ECF No. 10-4. ResearchGate notifies members whose uploads are subject to takedown notices so that the members have an opportunity to submit a "counter notice" claiming that the material they uploaded did not infringe on a copyright and should not have been removed. ECF No. 10-4 at 1–3.

Defendant has received a large number of takedown notices from Plaintiff Elsevier. ECF No. 10-2 ¶ 8. Although Defendant asserts that it has also "received a number of messages from users objecting to the removal of (or disabling of access to) their content from ResearchGate's website in response to DMCA notices sent to ResarchGate by copyright owners," these "messages" have apparently not come in the form of "counter notices" from users claiming that no infringement occurred. *Id.* ¶ 9.

**II.     DISCUSSION**

In the analogous context of a Rule 12(b)(7) motion regarding failure to join an indispensable party, the burden is on the moving party to show "the nature of the unprotected interests of the absent parties." 5A Federal Practice & Procedure § 1359; *see* 7 Charles A. Wright, Arthur R. Miller, & Mary K. Kane, Federal Practice & Procedure § 1609 (3rd ed. 2001). To satisfy its burden, a movant typically "present[s] affidavits of persons having knowledge of" the absent parties' interests and courts review this and other evidence outside the pleadings. 5A Federal Practice & Procedure § 1359. The Court borrows from this analogous standard here. Thus, although not stated explicitly by the statute, the Court presumes that Defendant, as the moving party, bears the burden of providing evidence that shows § 501(b) notice is warranted. *See* 17 U.S.C. § 501(b).

> Section 501(b) of the Copyright Act provides that:
>
> The court may require [the plaintiff] to serve written notice of the action with a copy of the complaint upon any person shown, by the records of the Copyright Office or otherwise, to have or claim an interest in the copyright, and shall require that such notice be served upon any person whose interest is likely to be affected by a decision in the case. The court may require the joinder, and shall permit the intervention, of any person having or claiming an interest in the copyright.

17 U.S.C. § 501(b). Because the purpose of § 501(b) notice is "to avoid a multiplicity of suits by 'insuring to the extent possible that the other owners whose rights may be affected are notified and given a chance to join the action,'" it is not enough for Defendant to show that co-authors have some theoretical interest in the suit or that they once had an actionable interest. *See Kamakazi Music Corp. v. Robbins Music Corp.*, 534 F. Supp. 69, 74 (S.D.N.Y. 1982) (quoting H.R. Rep. No. 94-1476, at 159 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5775). Instead, notice only accomplishes § 501(b)'s purpose when it is sent to a party that, because of the divisible copyright system, has a legal interest in the suit. *See* H. Comm. On the Judiciary, 89th

Cong., 1st Sess., Copyright Law Revision: Supplemental Report of Register of Copyrights on General Revision of U.S. Copyright Law: 1965 Revision Bill, Copyright Law Revision Part 6 (Comm. Print 1965) ("Register's Report") (emphasis added), *available at* https://books.google.com/books?id=65AYAAAAMAAJ&pg=PA131. As the legislative history explains:

> Subsection (b) of section 501 represents an effort to deal with a difficult practical problem: how, under a system of divisible copyright, to make it possible for the owner of a particular right to bring an infringement action in his own name alone, and at the same time to insure as far as possible that the owners of other rights which may be affected are notified of the suit and given an opportunity to become parties. As indicated in chapter 3, considerable concern has been expressed about the dangers to copyright owners when each of the exclusive rights under a copyright can be owned and defended separately in court. An example was given of the owner of an exclusive right who discovers too late that, as the result of a judgment in an action brought by the owner of another exclusive right in a remote jurisdiction, he can no longer enforce his rights because the defendant is judgment proof, because of the doctrines of *res judicata*, collateral estoppel, etc.

*Id.*

"[A]uthors of a joint work are co-owners of copyright in the work." 17 U.S.C. § 201(a). It is undisputed that at the time of a work's creation, all of its co-authors had an "interest" in the copyright covering that work for the purposes of § 501(b). However, authors may assign (or "exclusively license") their interest in the copyright to another. *See* 17 U.S.C. § 101. Transfer of copyright ownership must be "in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent." 17 U.S.C. § 204(a).

Although there is a dearth of case law interpreting what makes an agent "duly authorized," at least one Circuit has concluded that the burden is on the party challenging ownership to show that an agent is not duly authorized. *United Fabrics Int'l, Inc. v. C & J Wear, Inc.,* 630 F.3d 1255, 1258 (9th Cir. 2011). Further, where a party has provided "prima facie evidence of the validity of [its] copyright" by offering a copyright registration, 17 U.S.C. §

410(c), the party challenging ownership has "the burden of rebutting the facts set forth in the copyright certificate," *United Fabrics Int'l, Inc*, 630 F.3d at 1258.

Plaintiffs allege that to the extent that the copyrights for jointly authored articles were transferred through agreements signed only by one author, that corresponding author was acting as the co-author's "duly authorized agent." *Id.*; ECF No. 1 ¶¶ 21, 41. Defendant has not offered evidence to the contrary. The sample agreements to which Defendant cites indicate that the corresponding author has the authority required by § 204(a). If a corresponding author signs Plaintiff Elsevier's sample agreement, she represents that she "ha[s] informed the co-author(s) of the terms of this Journal Publishing Agreement and that I am signing on their behalf as their agent, and I am authorized to do so." ECF No. 10-5 at 4. Plaintiff ACS's sample publication agreement provides that "[t]he Corresponding Author or designee below, with the consent of all co-authors, hereby transfers to the ACS the copyright ownership in the referenced Submitted Work . . . ." ECF No. 10-7 at 2. Based on these documents, Defendant argues that co-authors may not have known "their ownership rights were being purportedly transferred, much less agreed to that transfer in a signed writing," ECF No. 9, but this conclusion is based entirely on speculation because according to the sample forms, corresponding authors have agreed that they are authorized to sign the agreement on the co-author's behalf and that they has informed the co-author of the agreement's terms.

Defendant argues that by allowing ResearchGate to host their articles, co-authors have acted inconsistently with the idea that a duly authorized agent has signed away their rights to upload articles to a commercial site. To be sure, authors must check a box stating that they have the right to share a file publicly before they upload it to Defendant's website, ECF No. 10-2 ¶ 6, but Defendant does not offer even one specific example of a co-author who did not sign an

7

agreement with Plaintiffs, personally believed the corresponding author lacked the authority to sign on his or her behalf, and therefore uploaded an article to Defendant's platform. Instead, Defendant only says that 60 percent of Plaintiffs' articles "may" have been uploaded by co-authors who were not the corresponding author. This is particularly insufficient where Plaintiffs allege that Defendant may have misled some authors into uploading material. Thus, rather than offering evidence about co-authors' inconsistent behavior, Defendant has only speculated that co-authors may have conducted themselves in a contradictory manner.

Further, although Defendant has offered evidence that certain users object to the removal of their content in response to takedown notices, ECF No. 10-2 ¶ 8, this evidence does not support a finding that co-authors have an interest in the copyrights at issue. First, Defendant does not specify whether the users it has received messages from are the co-authors that it claims deserve notice of this suit. *Id.* Additionally, Defendant does not suggest that these objections are based on ownership interests. *Id.* Therefore, Defendant has not offered evidence that co-authors, who of course have a theoretical interest in their articles, have any actionable interest in the articles' copyrights. As Plaintiffs point out, although Defendant gives users an opportunity to submit a "counter notice" to claim that the material they uploaded did not infringe on a copyright and should not have been removed, ECF No. 10-4 at 1–3, Defendant does not assert that it received any counter notices from authors after it responded to Plaintiffs' takedown notices. Taken together, the Court cannot comfortably draw an inference from the fact that some co-authors may have uploaded their articles to ResearchGate that these co-authors seek to challenge that the corresponding authors were not acting as their co-authors' duly authorized agents.

Defendant makes several arguments in support of its broader contention that co-authors have not transferred their ownership rights based on agreements with Plaintiffs. First, citing

Second Circuit dicta, Defendant argues that an owner may not transfer a co-author's ownership without the individual's express written consent. ECF No. 10-1 at 12 (citing *Davis v.Blige*, 505 F.3d 90, 99 (2d Cir. 2007)). This argument fails. The Second Circuit in *Davis v. Blige* was not analyzing whether an agent was duly authorized to transfer ownership, meaning the court's view that a joint author "may not transfer the rights of her co-authors without their express written consent" is not applicable to the facts here. 505 F.3d 90, 99 (2d Cir. 2007). Instead of considering an agency relationship between co-authors, the court in *Davis* analyzed whether a co-owner could retroactively license an infringer's conduct to extinguish a fellow co-owner's claim for infringement. *Id.* at 104. Unlike here, in *Davis*, there was no evidence before the court that the co-owner was acting as a duly authorized agent. *See id.*

Additionally, the Fourth Circuit has held that "where the copyright author appears to have no dispute with its assignee on this matter, it would be anomalous to permit a third party infringer to invoke § 204(a)'s signed writing requirement against the assignee." *Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 722 F.3d 591, 600 (4th Cir. 2013) (internal citations and quotation marks omitted). Section 204(a) resolves "disputes between owners and alleged transferee[s], and was not intended to operate for the benefit of a third-party infringer when there is no dispute between the owner and transferee." *Id.* (quoting *Kindergartners Count, Inc. v. Demoulin,* 249 F.Supp.2d 1214, 1221 n. 22 (D. Kan. 2003). Here, although Defendant alleges in conclusory fashion that there is a dispute between Plaintiffs (the copyright owners) and co-authors (the transferees), the Complaint and the evidence before the Court do not support that conclusion, meaning Defendant (the alleged third-party infringer) may not invoke § 204(a)'s signed writing requirement. *Id.* Further, even to the extent that a co-author must authorize a corresponding author to act as her agent in writing, Defendant does not offer any evidence

9

showing that corresponding authors lacked their co-authors' express written consent. *See* ECF No. 10-2–10-7. If Defendant's argument is that, to sufficiently allege their claims, Plaintiffs must have pled that corresponding authors received written consent from co-authors, that argument relates to the merits of Plaintiffs' claims, not to Defendant's requested relief under § 501(b).

Next, Defendant argues that the Court should presume that co-authors retained their interest in the relevant copyrights. ECF No. 10-1 at 13–14. However, there is no precedent for such a presumption and creating one does not make logical sense. *Recht v. Metro Goldwyn Mayer Studio, Inc.*, 580 F. Supp. 2d 775 (W.D. Wis. 2008), the case from which Defendant infers this presumption, does not actually support Defendant's view. Defendant hangs its hat on one line from the case in which a co-author is referred to as the "presumptive co-owner" of a screenplay. 580 F. Supp. 2d at 784. However, the plaintiff in *Recht* did not dispute that its co-author held ownership rights—rather, the complaint itself revealed the existence of the co-author's ownership interest. *Id.* at 784–785. Thus, no allegation or evidence existed there to suggest that the co-author had transferred his ownership interest through an agent, meaning it was fair to label the co-author as the presumptive co-owner. *Id.* To the contrary, here Plaintiffs' Complaint alleges that Plaintiffs own all the rights at issue, ECF No. 1 ¶ 21, and the evidence that Defendant has provided corroborates that allegation, ECF Nos. 10-5, 10-7.

To the extent that either party should benefit from a presumption at this stage, Plaintiffs, as the non-moving party and the party asserting copyright infringement, are the logical beneficiary. Registration of a copyright constitutes "prima facie evidence" of ownership of that copyright. 17 U.S.C. § 410(c). Once registration is established, the infringer has the burden

of rebutting this presumption of ownership. *M. Kramer Mfg. Co. v. Andrews*, 783 F.2d 421, 434 (4th Cir. 1986). Here, Plaintiffs' publications are protected by copyright registrations, creating a presumption of Plaintiffs' ownership. *Id.*; ECF No. 1 ¶ 21. To be sure, "this presumption is fairly easy to rebut," *Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc*., 618 F.3d 417, 430 (4th Cir. 2010), and if "other evidence in the record casts doubt upon" a copyright's validity, "validity will not be assumed," *Diamond Star Bldg. Corp. v. Freed*, 30 F.3d 503, 505 n.1 (4th Cir. 1994). However, no such evidence exists at this early stage of the case. Because Defendant has not met its burden to prove that any specific non-corresponding co-authors have a legal interest in the copyrights at issue, Defendant's Motion for Notice will be denied.

### III.    CONCLUSION

For the foregoing reasons, Defendant's Motion for Notice is denied. A separate Order shall issue.

Date: June  11, 2019        /s/
                            GEORGE J. HAZEL
                            United States District Judge