

Scott A. Zebrak
4530 Wisconsin Avenue NW, 5th Floor
Washington, DC  20016
202.450.3758 | scott@oandzlaw.com

September 12, 2019

**Via ECF**

Honorable George J. Hazel
United States District Court, District of Maryland
Greenbelt Division
6500 Cherrywood Lane
Suite 445A
Greenbelt, MD  20770

    Re:    *American Chemical Society et al. v. ResearchGate GmbH*, No. 8:18-cv-03019-GJH

Dear Judge Hazel:

On behalf of Plaintiffs the American Chemical Society, Elsevier Inc., Elsevier Ltd., and Elsevier B.V. (collectively, "Plaintiffs") in the above-captioned action, we write regarding Defendant ResearchGate GmbH's ("ResearchGate") failure to comply with requests for production.[1]  Six months into discovery in this case, ResearchGate has yet to produce *any* documents.  Further, ResearchGate has asserted baseless objections in an attempt to shield its infringing conduct from the light of day.  Despite Plaintiffs' good-faith attempts to resolve these disputes, including numerous letters between counsel and several lengthy meet-and-confer calls, the Court's intervention is necessary.  While we do not doubt the sincerity of ResearchGate's counsel in representing that they are working on a production, Plaintiffs cannot wait any longer.  A schedule is in place, the infringement is ongoing, and the case must move forward.

This case involves ResearchGate's massive infringement of Plaintiffs' copyrighted works.  Plaintiffs have asserted claims of direct infringement, induced infringement, contributory infringement, and vicarious infringement against ResearchGate.  Specifically, ResearchGate has directly and intentionally infringed Plaintiffs' copyrights by copying, distributing, and publicly displaying on its website Plaintiffs' copyrighted works without their authorization.  ResearchGate has engaged in secondary infringement by: inducing the uploading and downloading of Plaintiffs' copyrighted works; encouraging, causing, and materially contributing

---

[1] At the Rule 16 Scheduling Conference on February 28, 2019, the Court suggested that the parties raise discovery disputes by letter, rather than by formal motion pursuant to L.R. 104.8 and 105.  If the Court prefers a formal motion, Plaintiffs will proceed with a motion that complies with L.R. 104.8 and 105.

to the infringement with knowledge of the infringing activity; and obtaining a direct financial benefit from the infringement while failing to exercise its right and ability to stop or limit it.

**I.   ResearchGate must begin producing documents immediately.**

On March 11, 2019, Plaintiffs served ResearchGate with Plaintiffs' First Set of Interrogatories and Plaintiffs' First Request for Production of Documents.  The parties met and conferred by phone May 2-10, 2019, and again on August 20, 2019 and have exchanged several letters and emails.

Plaintiffs have patiently and persistently tried to obtain discovery from ResearchGate.  Plaintiffs reached out several times to coordinate on a schedule to begin document productions on a rolling basis, but received no response.  While we understand that document production takes time, we cannot wait indefinitely.[2]  More than six months have passed, and ResearchGate has not produced *any* responsive documents.

By contrast, Plaintiffs have been working diligently to respond to ResearchGate's discovery requests.  Plaintiffs produced approximately 17,000 documents, consisting of over 200,000 pages and over 2,700 native files, on August 9, 2019 and continue to work on further productions.

The Court should order ResearchGate to produce documents immediately.

**II.   ResearchGate has baselessly and inappropriately objected to producing certain documents.**

Generally, Plaintiffs' discovery requests seek documents relating to:

- The scope and extent of ResearchGate's infringing activities;
- How ResearchGate obtained copies of Plaintiffs' copyrighted works, including ResearchGate's scraping, *i.e.*, copying Plaintiffs' copyrighted works from websites;
- What ResearchGate did with Plaintiffs' copyrighted works once it obtained copies;
- ResearchGate tricking and encouraging users into uploading or downloading Plaintiffs' copyrighted works (or "claiming" a copy of an article that ResearchGate already copied onto its computer servers), including through website features, such as "request full-text" and "one-click upload," and emails, marketing, and customer communications inducing infringing uploads via false notions of "self-archiving";
- How ResearchGate built its business on infringing activities, including structuring its website around webpages that ResearchGate created (on its own initiative) for specific copyrighted journals, specific published journal articles, and specific authors; and
- ResearchGate's knowledge of, intent with regard to, and financial benefit from the foregoing.

---

[2] On our most recent call on August 20, 2019, we informed ResearchGate's counsel that we would seek the Court's assistance if ResearchGate did not produce documents soon.  But, on September 10, 2019, ResearchGate's counsel stated it would send another letter but said nothing about when it would produce documents.

All of these requested documents are relevant and important to issues of liability or damages. Yet, as discussed below, ResearchGate seeks to deny discovery that is basic for a copyright infringement case by improperly limiting many of its discovery responses.[3] Some of the discovery disputes may be resolved after reviewing ResearchGate's eventual productions; we do not address those issues here.[4] Instead, this letter seeks the Court's assistance on the most urgent issues, which are required to preclude ResearchGate from continuing to categorically withhold discovery that is necessary and important to this case.

> **A.    ResearchGate cannot reinvent itself for litigation and limit discovery to its "current" processes or policies.**

In response to Plaintiffs' requests for documents regarding ResearchGate's infringing business practices and the operation of its website, ResearchGate inappropriately limits many of its discovery responses to its "current" processes or policies. *See, e.g.*, ResearchGate's Responses and Objections to Plaintiffs' First Request for Production of Documents Nos. 3-4, 6-7, 13, 16-17, 22, 25, 27-28, 36, 42-43, 50, 64. ResearchGate's infringing conduct occurred over time, and the processes and policies, whether current or past, that resulted in infringement are relevant and highly important, both to liability and damages. As with current processes or policies, past processes or policies show how and why infringement occurred. For example, such documents would show the steps ResearchGate took to obtain copies of Plaintiffs' copyrighted works, ResearchGate's design and use of various features on its website to induce and encourage users to upload and download Plaintiffs' copyrighted works, and the extent of ResearchGate's role in contributing to users' infringement. Past processes or policies also may reveal ResearchGate's knowledge, intent, and right and ability to supervise and control the infringement, as well as its efforts to build a business based upon copyright infringement.

ResearchGate cannot erase its actions over the course of time simply because it changed a process or policy. By way of example, ResearchGate publicly displayed multi-page previews of articles that it had already copied onto its servers at its own initiative, hoping that authors would "claim" the article upon prompting, in which case ResearchGate would then display the full copy of the article for viewing and downloading. That practice does not become irrelevant simply because ResearchGate (perhaps recognizing the legal exposure) may have disabled this feature. Another example concerns ResearchGate's past processes and policies for scraping copies of Plaintiffs' copyrighted works off websites and copying them to its servers.

While ResearchGate has suggested it might reconsider Plaintiffs' request for past processes and policies on a request-by-request basis, ResearchGate has refused to withdraw its objection for any request. This position is a stalling tactic.

The Court should compel ResearchGate to produce documents responsive to Plaintiffs' requests without withholding responsive documents concerning past processes or policies.

---

[3] In the interest of not burdening the Court with unnecessary paper, we omitted copies of the parties' written discovery and correspondence but can submit them upon request.

[4] For example, the parties agreed to discuss custodians and terms to search emails that are responsive to each other's discovery requests; that process is not yet completed.

### B. ResearchGate cannot exclude important discovery by imposing an arbitrary time-period limitation.

ResearchGate inappropriately limits almost all of its responses to the time period of October 2, 2015 to the present. *See*, *e.g.*, ResearchGate's Responses and Objections to Plaintiffs' First Request for Production of Documents Nos. 1-53, 56-66. ResearchGate contends that documents pre-dating October 2, 2015, three years prior to the filing of the Complaint, are not relevant because the applicable statute of limitations is three years. Its position has no legal basis.

The statute of limitations does not limit the relevance of the documents nor curtail a defendant's discovery obligations. *See*, *e.g.*, *Arista Records LLC v. Lime Group LLC*, 784 F. Supp. 2d 398, 418-19 (S.D.N.Y. 2011) (holding that documents pre-dating statute of limitations period was "relevant to the determination of Defendants' state of mind, including whether they were aware of . . . users' infringing activities and whether they intended to facilitate those activities within the limitations period"); *Khan v. Sanofi-Synthelabo, Inc.*, No. 01CIV.11423JSMDF, 2002 WL 31720528, at *4 (S.D.N.Y. Dec. 3, 2002) ("[T]he discovery sought should not be limited arbitrarily by any statute of limitations . . . ."). The massive infringement on or after October 2, 2015 resulted in material part from ResearchGate's actions, infrastructure, knowledge, and intent preceding that date. The discovery sought here has a direct bearing on the liability and damages issues in suit, including the scope of ResearchGate's infringing activity, its knowledge of infringement, and its intent to infringe. ResearchGate cannot hide behind the statute of limitations to avoid its discovery obligations.

While ResearchGate has suggested it would consider an exception to its general position only for a small subset of Plaintiffs' requests (namely, Plaintiffs' Interrogatory No. 15 and Plaintiffs' Request for Production Nos. 2, 8, 9, 11-12, and 14), that is not sufficient. For those requests only, ResearchGate indicated it may be willing to produce documents dated before October 2, 2015 that relate to how the works in suit appearing on ResearchGate's website after October 2, 2015 were uploaded to ResearchGate's website. But ResearchGate is not entitled to prevent Plaintiffs from uncovering the scope of ResearchGate's infringement and the means by which it obtained Plaintiffs' copyrighted works. That is exactly what it is doing in seeking to limit its response only to the works currently in suit. Further, it is unacceptable for ResearchGate to continue delaying production of documents for which it does not oppose production.

The Court should compel ResearchGate to produce documents responsive to Plaintiffs' requests without withholding any responsive documents pre-dating October 2, 2015.

### C. ResearchGate's cannot limit its production to non-email documents.

In response to Plaintiffs' Request for Production Nos. 14, 37-39, 41, 45-47, 49, 52, and 60, ResearchGate plans to produce only non-email documents it claims are sufficient to show the requested information and thus refuses to produce responsive emails and other communications. Such a flat objection to producing email is improper. These requests seek documents that would shed light on ResearchGate's intent, knowledge, and motives for infringement, including what draws users to ResearchGate's website and funding or financing for ResearchGate or its website. Still other requests specifically seek communications, both internal and with users, about using

and uploading Plaintiffs' copyrighted works on ResearchGate's website, as well as any complaints from authors or allegations of infringement concerning articles appearing on ResearchGate's website. ResearchGate's plan to produce only non-email documents sufficient to show the requested information is wholly inadequate. A defendant such as ResearchGate is often more forthcoming about its intent, knowledge, and actual conduct in email and other types of digital communications (as opposed to formal written processes and policies). *See, e.g.*, *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 149 F. Supp. 3d 634, 655-56, 658 (E.D. Va. 2015) (finding that "Cox employees followed an unwritten policy" and that emails in the record "strip[ped] Cox of any innocence" and made "clear" that Cox's repeat infringer policy on the books was an "absolute mirage" given how Cox acted), *aff'd in relevant part*, 881 F.3d 293 (4th Cir. 2018). ResearchGate cannot cherry-pick and produce only documents favorable to it.

The Court should compel ResearchGate to produce documents responsive to Plaintiffs' requests without withholding responsive emails or other digital communications.

> **D.    ResearchGate must produce documents regarding its creation of author pages and publication pages.**

ResearchGate refuses to produce any documents responsive to Plaintiffs' Request for Production No. 31, which seeks documents on one of the ways in which ResearchGate has encouraged and tricked authors into uploading copies of published journal articles to its website. ResearchGate structures its website with various pages, such as "author pages" profiling a particular scientist or researcher and "publication pages" corresponding to particular journal articles. These pages, many or most of which are likely created by ResearchGate, are essentially the infringing DNA for the website—a tree structure dedicated to copyrighted works that ResearchGate knows should not be uploaded or downloaded on its website. ResearchGate nonetheless uses it as the vehicle for drawing eyeballs to infringing copies of Plaintiffs' copyrighted works and for prompting authors—through emails and other means—to upload or endorse the prior upload of Plaintiffs' copyrighted works. In seeking documents showing the number of author and publication pages created by a user versus ResearchGate, this request relates to ResearchGate's structural design for infringing activity and specifically seeks information quantifying the scale of infringing activity on ResearchGate's website.

The Court should compel ResearchGate to produce documents responsive to Plaintiffs' Request for Production No. 31 regarding ResearchGate's creation of author pages and publication pages.

Thank You for Your consideration of these issues.

> Respectfully submitted,
>
> */s/ Scott A. Zebrak*
>
> Scott A. Zebrak

cc: Counsel of Record (via ECF)