**DurieTangri**

Joseph C. Gratz
415-362-6666 (main)
jgratz@durietangri.com

March 3, 2020

**VIA ECF**

Honorable George J. Hazel
United States District Court
District of Maryland
6500 Cherrywood Lane
Suite 445A
Greenbelt, MD 20770

Re: *American Chemical Society et al. v. ResearchGate GmbH*
Case No. 8:18-cv-03019-GJH

Dear Judge Hazel:

ResearchGate writes in reply to Plaintiffs' opposition (ECF No. 45) to ResearchGate's letter motion to compel (ECF No. 43).

I.     **Background**

Plaintiffs mischaracterize this dispute and the discovery completed thus far. Plaintiffs do have "histories," as they say, Letter from Zebrak to Court (Feb. 25, 2020), ECF No. 45 at 1 ("Pls.' Opp'n"): they have profited off the free labor of the scientific community for many years, while ResearchGate has been helping scientists disseminate their research for a much shorter time. But here Plaintiffs seek to capitalize further on their dominant market position by targeting ResearchGate—a direct competitor—based on researchers' posting *their own work* on ResearchGate's website. Allowing researchers to post and share their own work is just one aspect of ResearchGate's model, which focuses on connecting researchers around the world and, ultimately, allowing scientific knowledge to be shared and encouraging scientific progress.

ResearchGate does not wish to burden the Court with the details of the parties' discovery correspondence and productions. Briefly, in addition to the thousands of documents ResearchGate has produced, it has produced gigabytes of data in spreadsheets that Plaintiffs requested and, since August, has made its source code available for inspection (which Plaintiffs so far have not bothered to look at). Plaintiffs have slow-rolled their searches and production, and many of the documents they have produced are simply copies of publicly available scientific journal articles—not, for example, probative communications or internal documents.

Honorable George J. Hazel
March 3, 2020
Page 2

## II.     Documents Plaintiffs Should Be Compelled To Produce

Plaintiffs' arguments in opposition fail.  Their attempts to distract from the key factual and legal issues do not undermine the relevance of the documents ResearchGate seeks.

### A.     Value of Plaintiffs' Articles

Plaintiffs admit that responsive financial information exists on a journal-by-journal basis.[1]  They also admit that actual damages are relevant to statutory damages.  (Pls.' Opp'n at 3; *see* Letter from Gratz to Court (Feb. 11, 2020), ECF No. 43 at 2 ("Letter Motion"); *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 127 (2d Cir. 2014); *Disney Enters., Inc. v. Delane*, 446 F. Supp. 2d 402, 406 (D. Md. 2006).)  Plaintiffs' fundamental argument is that journal-level documents ("P&Ls") are "too attenuated" to show the alleged value of their articles.  (Pls.' Opp'n at 3.)  Plaintiffs therefore claim that they should not be required to produce ***anything*** relating to the value of the works in suit—while still arguing to the Court and the jury that they suffered actual (albeit unquantified) damages.  (*Id.*)[2]  That argument fails.  In short, Plaintiffs cannot have it both ways.  They cannot contend that they suffered actual, but "unquantifiable" damages, while simultaneously withholding evidence that the damages ***can*** be quantified: evidence that ResearchGate will use to show the jury that the correct quantification is zero.

ResearchGate is entitled to the information it needs to rebut Plaintiffs' arguments that ResearchGate's existence harms their business.  Journal-level financial information is relevant to show whether Plaintiffs appear to have lost any revenue (which ResearchGate contends they have not).  Plaintiffs are of course welcome to argue (in a *Daubert* motion or otherwise) that the journal-level information is too attenuated for ResearchGate to rely on it.  But that does not mean that the journal-level information is not ***discoverable***.

Of course, this discovery could be obviated by a stipulation by Plaintiffs that they have not, in fact, suffered any harm from ResearchGate's existence or activities.  But Plaintiffs have declined to enter into such a stipulation.

For these reasons, Plaintiffs should be compelled to produce documents in response to ResearchGate's RFPs 7, 10, and 11.

### B.     Unauthorized Use or Distribution, Take-Down Notices, and Assertions of Infringement

None of Plaintiffs' arguments call into question the relevance of documents responsive to RFPs 17, 27,

---

[1] Plaintiffs emphasize that financial information does not exist on an article-by-article basis (Pls.' Opp'n at 1-2), but ResearchGate already recognized in its opening letter that article-level information may not be available (Letter Motion at 2 n.3; Pls.' Opp'n at 2-3).

[2] Plaintiffs also appear to oppose production on the ground that this information is "highly sensitive."  (Pls.' Opp'n at 2.)  That is irrelevant.  Many documents in this case and nearly all of the documents ResearchGate has produced are highly sensitive; indeed, ResearchGate has made its source code available to Plaintiffs for inspection since August of last year.  An appropriate stipulated protective order was entered to address concerns relating to the disclosure of highly confidential information.  (Stipulated Protective Order, ECF No. 32.)

and 36.

First, Plaintiffs do not meaningfully dispute that the requested documents are relevant to damages and ResearchGate's copyright-misuse defense. As ResearchGate explained in its opening letter: Documents showing the unauthorized use or distribution of Plaintiffs' works, take-down notices sent to third parties, and documents sufficient to show assertions of copyright infringement regarding any copyrighted work will show the harm, if any, caused by third parties rather than ResearchGate, in addition to showing whether Plaintiffs actually considered ResearchGate's activities infringing or problematic for Plaintiffs' business. (Letter Motion at 3.) Other than in a clause of a conclusory sentence (Pls.' Opp'n at 4), Plaintiffs have not said otherwise.

Second, Plaintiffs' argument on red-flag knowledge misses the point. Plaintiffs rely on an unsupported assertion that ResearchGate "knew exactly what it was doing." (*Id.*) ResearchGate disagrees and intends to prove otherwise. Further, as much as Plaintiffs may wish to defeat discovery, they cannot do so merely by asserting that their allegations are true. The law is clear that ResearchGate has no duty to monitor its site for potential infringing activity. *See* 17 U.S.C. § 512(m)(1). In the absence of a DMCA-compliant takedown notice, ResearchGate is required to take action with respect to infringing activity on its website only if ResearchGate has actual or red flag knowledge of the infringement. The test for red-flag knowledge is whether ResearchGate was aware of facts that *to a reasonable person* would have made it obvious that *particular uploads* by ResearchGate users were infringing. (Letter Motion at 3; *see Mavrix Photographs, LLC v. Livejournal, Inc.*, 873 F.3d 1045, 1057-58 (9th Cir. 2017).) ResearchGate is entitled to discovery that would allow it to show infringement would not be obvious.

Third, Plaintiffs confusingly suggest that they have made no effort to investigate responsive documents, while at the same time claiming that such documents cannot be produced. Plaintiffs note that responsive documents may not exist at all ("to the extent that ResearchGate seeks documents that even exist") but in the same sentence firmly state that these documents are not "store[d] . . . in such a way that would allow Plaintiffs to search them by work" (Pls.' Opp'n at 4), a point that Plaintiffs never raised until now. This further demonstrates that Plaintiffs have no principled opposition to these document requests; they simply are trying to avoid discovery of relevant documents.

Accordingly, the Court also should order Plaintiffs to produce documents responsive to RFPs 17, 27, and 36.

### C. Documents Related to ResearchGate's Copyright-Misuse Defense

Plaintiffs' points on copyright misuse also fail. Plaintiffs attempt to distract from the relevant discovery standard. Plaintiffs' position on the law is essentially that, if ResearchGate cannot prove "exceptional circumstances" and copyright misuse based on public documents alone, ResearchGate may not seek discovery of the very documents that Plaintiffs fault ResearchGate for not knowing about. (Pls.' Opp'n 4-5.) But ResearchGate need not show that it can prevail on the merits of its copyright-misuse defense at this stage, as Plaintiffs suggest. (*Id.* at 4-6.) The test is whether the requested documents are "relevant to any party's claim or defense[.]" Fed. R. Civ. P. 26(b)(1). And they are: They are relevant

to ResearchGate's affirmative defense of copyright misuse, as explained in more detail in ResearchGate's opening letter motion and below.[3]

### 1. Coalition for Responsible Sharing (RFP Nos. 35, 44-46)

Plaintiffs admit the Coalition was responsible for "initiating litigation" in this case (Pls.' Opp'n at 7) but still seek to block all discovery into the Coalition. Having made the Coalition for Responsible Sharing relevant to this case, Plaintiffs cannot immunize the Coalition from discovery.

Plaintiffs' primary argument against discovery in response to RFPs 35 and 44-46 is that, because ResearchGate has not already established copyright misuse at this stage in the litigation, it may not seek discovery of documents relating to the Coalition for Responsible Sharing. (*See* Pls.' Opp'n at 6 (noting that ResearchGate has failed to show facts to support its assertions that Plaintiffs are attempting to control content outside the scope of their copyrights and that Plaintiffs (particularly Elsevier) have an interest in protecting Mendeley from competition).) That is backwards. ResearchGate is seeking discovery into the Coalition in order to support and establish its affirmative defense of copyright misuse. The purpose of discovery is to develop the factual record; it puts the cart before the horse to say that a party must prove its case prior to getting the discovery needed to do so.

In any event, Plaintiffs overlook that the fundamental basis for these document requests is the nature of the Coalition itself. The Coalition is an organization made up of companies that normally compete with each other, which is entirely focused on pursuing coordinated activities against ResearchGate. (*See* Letter Motion at 3.) The Coalition was formed by Plaintiffs and other publishers in response to the competitive threat ResearchGate poses: In particular, ResearchGate not only threatens Plaintiffs' traditional lines of business, but also competes directly with the self-described "academic social network" Mendeley, which is owned by Plaintiff Elsevier. While some publishers have decided to work with ResearchGate, Plaintiffs and the other members of the Coalition have instead stated publicly that their mission is to work together to oppose ResearchGate. (*Id.*) That alone justifies discovery, so that ResearchGate can determine whether the Coalition is facilitating copyright misuse. Indeed, Plaintiffs put the Coalition at issue in this dispute by referring to the Coalition in their complaint. (Compl. ¶ 49, ECF No. 1.)

Plaintiffs also assert that the Coalition's strategy is consistent with the DMCA and public policy on copyrights. But without discovery, ResearchGate and the Court have no way to know that that is true. Yes, the Coalition's public statements include platitudes that it is devoted to enforcing copyrights lawfully. The question is whether the Coalition is privately doing more than that. Plaintiffs cannot preclude discovery into misuse based on their own *ipse dixit*. In addition, the Coalition's plain statement admits that it seeks to circumvent the notice-and-take-down regime under the DMCA, which is further evidence of copyright misuse. (Letter Motion at 4.)

---

[3] That ResearchGate's copyright-misuse defense is one of seventeen does not diminish its importance in the case or the relevance of the requested documents. Plaintiffs never moved to strike, but they now seem to hold it against ResearchGate that it has alleged many and, ResearchGate believes, meritorious affirmative defenses. (Pls.' Opp'n at 4 n.1.) Plaintiffs may not like seeing a list of affirmative defenses, since those are key difficulties with their claims in this case. But the number or order of defenses does not reduce the scope of discovery that ResearchGate should receive.

Plaintiffs misleadingly cite several cases where courts have not allowed discovery into copyright misuse allegations, but in those cases, the allegations themselves were insufficient to establish copyright misuse. In Plaintiffs' cited cases, courts acknowledged that competitors' collective enforcement of copyrights did not alone amount to copyright misuse. (*See Preferred Carolinas Realty, Inc. v. Am. Home Realty Network*, No. 1:13CV181, 2014 WL 1320133, at *5 (M.D.N.C. Mar. 28, 2014); *UMG Recordings, Inc. v. Lindor*, 531 F. Supp. 2d 453, 459 (E.D.N.Y. 2007).)

That is not what ResearchGate is claiming here. ResearchGate claims that Plaintiffs are (1) utilizing their licenses to control noncopyrightable material, such as preprints, in a similar manner to the plaintiffs in *Lasercomb America, Inc. v. Reynolds*, 911 F.2d 970, 979 (4th Cir. 1990), and *PRC Realty Systems, Inc. v. National Association of Realtors*, 972 F.2d 341 (4th Cir. 1992) (unpublished table decision); and (2) coordinating with competitors to use the cost of litigation to coerce ResearchGate into giving up its safe harbor rights under the DMCA, circumventing the public policy embodied in copyright. These allegations are specific instances of misuse that go far beyond simply alleging that the Coalition is collectively enforcing copyrights. Therefore, the cases Plaintiffs cite in which discovery into misuse was denied are inapposite.

Finally, as to red-flag knowledge and damages, Plaintiffs fail to explain away the relevance of Coalition-related documents. ResearchGate has put forth several reasons Coalition-related information likely relates to ResearchGate's alleged awareness of infringing activity, its state of mind, and the conduct and attitude of Plaintiffs. (Letter Motion at 5.) Plaintiffs assert that ResearchGate has not "ma[d]e clear how secret documents it never saw" go to these issues in the case. (*Id.*) But ResearchGate cannot describe with particularity how the undisclosed documents go to the issues in the case simply because Plaintiffs (a) have entirely refused discovery into the Coalition and (b) in doing so, have given no indication of what responsive documents exist. It is no surprise, then, that ResearchGate is unable at this stage to identify particular information in existence, even if that were (and it is not) ResearchGate's obligation under Rule 26.

## 2. Other Documents Related to Copyright Misuse (RFP Nos. 47-49)

For these requests, Plaintiffs fail to put forth any actual arguments and, instead, refer to other, publicly available documents they have produced and to the proposition that these documents "might reveal something that ResearchGate wishes to see." (Pls.'s Opp'n at 8.) ResearchGate has explained that it needs documents beyond final license agreements and published sharing guidelines in order to determine Plaintiffs' understanding of their agreements with authors, copyrightable material in different versions of articles, and Plaintiffs' attempts to prevent authors from modifying preprints. (Letter Motion at 5.) Internal documents are necessary to shed light on these areas of Plaintiffs' conduct and—in particular—to support ResearchGate's copyright-misuse defense. Indeed, Plaintiffs concede the relevance (although they claim it is minimal) of these documents. (Pls.'s Opp'n at 8.) They make only conclusory statements about the burden and potential privilege review in searching for responsive documents, which demonstrate at best that Plaintiffs do not know what the burden would be.

Accordingly, and for the reasons set forth in ResearchGate's opening letter motion, Plaintiffs should be compelled to produce documents relating to ResearchGate's defense of copyright misuse.

Honorable George J. Hazel
March 3, 2020
Page 6

### III.  Conclusion

For the foregoing reasons, ResearchGate requests that the Court compel Plaintiffs to produce documents in response to the full scope of RFPs 7, 10, 11, 17, 27, 35, 36, and 44-49.


Respectfully submitted,


*/s/ Joseph C. Gratz*            */s/ Toyja E. Kelley*
Joseph C. Gratz                Toyja E. Kelley
                       Saul Ewing Arnstein & Lehr LLP
                       500 E. Pratt Street, Suite 900
                       Baltimore, MD 21202-3133
                       410-332-8600
                       410-332-8862 (facsimile)
                       Toyja.kelley@saul.com

cc:     Counsel of Record (via ECF)