UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
GEORGE JARROD HAZEL
UNITED STATES DISTRICT JUDGE

6500 CHERRYWOOD LANE
GREENBELT, MARYLAND 20770
(301) 344-0637
(301) 344-3910 FAX

June 19, 2020

RE: *American Chemical Society, et al., v. ResearchGate GmbH*,
   GJH-18-3019

### **LETTER ORDER**

Dear Counsel:

   Following a teleconference with the parties on June 9, 2020, the Court has further reviewed Defendant ResearchGate GmbH's letter motion to compel production of documents, ECF No. 43, Plaintiffs' letter in opposition, ECF No. 44, and Defendant's letter in reply, ECF No. 45. The Court makes the following findings with respect to the third set of documents that Defendant seeks.

   Plaintiffs, academic journal publishers, bring this copyright infringement action against Defendant ResearchGate, alleging that Defendant publishes Plaintiffs' copyrighted articles on its website without authorization after obtaining copies on the Internet or inducing authors to provide them. ECF No. 1. Among other affirmative defenses, Defendant claims that Plaintiffs' claims are barred partly or wholly by the doctrine of copyright misuse. ECF No. 9 at 20.

   A copyright misuse defense "is an assertion that the copyright holder is using his copyright, 'to secure an exclusive right or limited monopoly not granted by the [Copyright] Office and which it is contrary to public policy to grant.'" *Costar Group Inc. v. Loopnet, Inc.*, 164 F. Supp. 2d 688, 708 (D. Md. 2001) (alteration in original) (quoting *Lasercomb Am., Inc. v. Reynolds*, 911 F.2d 970, 977 (4th Cir. 2001)); *see also Altmayer-Pizzorno v. L-Soft Int'l, Inc.*, 302 F. App'x 148, 156 (4th Cir. 2008). "[M]isuse of copyright law is generally found in cases where the copyright owner has engaged in some form of anti-competitive behavior." *Thomas M. Gilbert Architects, P.C. v. Accent Builders & Developers, LLC*, 629 F. Supp. 2d 526, 536 (E.D. Va. 2008).

   Defendant seeks documents concerning the Coalition for Responsible Sharing ("Coalition"), a group of publishers of which Plaintiffs are members that Defendant asserts was formed for the express purpose of targeting Defendant. Defendant's requests seek "all documents and communications" relating to the Coalition, Plaintiffs' "understanding, endorsement, or participation" in certain public statements by the Coalition, and Plaintiffs' position that they "do not have a dispute with the individual researchers." ECF No. 43 at 3. Defendant asserts that because the Coalition was founded to pursue coordinated activities against Defendant, any document relating to the Coalition, including its funding, necessarily relates to Defendant's affirmative defense of copyright misuse.

Defendant's argument largely relies on the repeated insinuation that the Coalition's activities against Defendant, taken as a whole, amount to copyright misuse because the Coalition was formed as a collective effort to oppose Defendant's alleged infringement of the members' copyrights. But courts have consistently rejected the argument that joint action by copyright holders against a single alleged infringer, without more, constitutes copyright misuse. *See, e.g.*, *Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 888 F. Supp. 2d 691, 711–12 (D. Md. 2012) ("Even if the Court accepted that [plaintiff] was collectively enforcing its copyrights with other [similarly situated competitors], that would not, alone, amount to copyright misuse."); *UMG Recordings, Inc. v. Lindor*, 531 F. Supp. 2d 453, 459 (E.D.N.Y. 2007) (holding that "[c]ollectively bringing infringement suits . . . exhibits none of the hallmarks of anticompetitive copyright pooling" that could constitute copyright misuse).

In support of its misuse argument, Defendant alludes to two types of actions by the Coalition. Neither substantially supports Defendant's position. Defendant first references "preprint versions" of academic articles, which Defendant allows authors to post on its website. ECF No. 43 at 4. Plaintiffs' Complaint defines a preprint as "the author's initial write-up of research results and analysis that has not been submitted to a journal, peer-reviewed, or had any other value added to it by the publisher." ECF No. 1 ¶ 20. According to Defendant, Coalition members' "attempts to control content—such as preprints—outside the scope of their retained copyright interests by utilizing litigation related to the copyright licenses is textbook copyright misuse." ECF No. 43 at 4.

However, Defendant has failed to allege any facts, either in its filings or in the teleconference with the Court, to support this claim. In fact, as Plaintiffs note, Plaintiffs' allegations of infringement in this action concern unauthorized copying only of published journal articles and do not relate to preprints. ECF No. 45 at 6 (citing ECF No. 1 ¶¶ 3–6, 22, 24–26). Defendant's request for production thus seems to be at least in part an attempt to air grievances beyond the scope of this action. In any case, while Defendant protests that it needs discovery to determine whether its misuse defense is viable, the Court cannot permit requests for extensive and burdensome production based solely on unsubstantiated conjecture without a clear link to the allegations actually at issue.

Defendant also briefly references Mendeley, an "academic social network" owned by Plaintiff Elsevier. Defendant asserts that Plaintiffs see Defendant as a "threat" to Mendeley because Defendant allows authors to post preprints as Mendeley does. ECF No. 43 at 4. But Defendant fails to explain how its assumption that Plaintiffs see Mendeley in this way justifies Coalition discovery. Defendant asserts that "Plaintiffs would prefer that research and findings are available only through *their* avenues of journals and Mendeley," but fails to draw any link from that presumed preference to any indications of copyright misuse beyond general insinuations of misconduct. ECF No. 43 at 4 (emphasis in original).

Defendant finally points to a statement on the Coalition's website that Defendant claims expresses Plaintiffs' intent to use "the cost of litigation as a lever to coerce ResearchGate to give up its undisputed rights" under the "safe harbor" provision of the Digital Millennium Copyright Act (DMCA), 17 U.S.C. § 512. ECF No. 43 at 4. Defendant quotes the Coalition as stating that its members "believe that [the DMCA] is not a viable long-term solution'" to Defendant's

2

alleged infringement. *Id.* According to Defendant, the statement is an admission that with the present litigation, Plaintiffs are attempting to "circumvent the clear public policy embodied" in the DMCA, which permits copyright holders to issue notices to request that an entity remove copyrighted content submitted by its users. *Id.*

This argument fails to support copyright misuse discovery for two reasons. First, Defendant's broad reference to public policy only addresses one of the two elements of the defense; Defendant fails to adequately explain how this litigation is an attempt to control competition beyond the scope of Plaintiffs' copyrights, rather than merely to enforce the core rights against infringement that those copyrights confer. *See Lasercomb*, 911 F.2d at 979. Defendant's reliance on the same vague allegations of impropriety supporting its other arguments is unavailing. Second, the context of the statement, provided by Plaintiffs, reveals that Defendant's quotation is selective. The full passage at issue states that:

> In rejecting all of these collaborative solutions, ResearchGate has insisted that publishers instead issue millions of takedown notices for unauthorized content on its site now and in the future. While the Coalition for Responsible Sharing has now no other option but to take this route, we firmly believe that it is not a viable long-term solution, *given the current and future scale of infringement*. Sending large numbers of takedown notices *on an ongoing basis will prove highly disruptive to the research community*.

ECF No. 45 at 7 (emphasis in original).

The statement thus indicates that Coalition members are, in fact, issuing takedown notices to Defendant, but that they have long expected to also utilize litigation because the scope of Defendant's alleged infringement is so extensive. Both strategies are within Coalition members' rights as owners of copyrights. Defendant offers no grounds, legal or factual, for its assertion that using litigation to enforce copyrights as an additional strategy beyond takedown notices is improper or an indicator of copyright misuse. That this litigation is costly to defend is not the direct result of any inappropriate action by Plaintiffs or the Coalition that Defendants have identified.

Defendant's remaining arguments in support of Coalition discovery, concerning red flag knowledge and damages, are related to arguments made elsewhere in Defendant's letter motion and were addressed in the teleconference with the Court. Because Defendant's arguments for Coalition discovery based on a copyright misuse defense are unpersuasive, Defendant's motion to compel production of Coalition documents is hereby denied.

Sincerely,

/s/
George J. Hazel
United States District Judge