Durie Tangri

Joseph C. Gratz
415-376-6407 (direct)
415-362-6666 (main)
jgratz@durietangri.com

September 9, 2020

**VIA CM/ECF**

The Honorable George J. Hazel
United States District Court
District of Maryland
6500 Cherrywood Lane
Suite 445A
Greenbelt, MD 20770

Re: *American Chemical Society et al. v. ResearchGate GmbH*
Case No. 8:18-cv-03019-GJH

Dear Judge Hazel:

ResearchGate respectfully submits this letter brief seeking an order to compel Plaintiffs to produce documents in response to several of ResearchGate's requests for production.

## I. Brief Background

Plaintiffs in this case, who are large publishers with billions in revenue, allege that ResearchGate is liable for copyright infringement when scientists post *their own work* on ResearchGate's website. These claims are based on allegations that "ResearchGate solicits specific authors to upload copies of specific PJAs [published journal articles] that ResearchGate knows are published in journals whose terms do not allow such posting[,]" (Compl. ¶ 34, ECF No. 1), and that ResearchGate presents "false and misleading" statements about what types of content lawfully may be posted on ResearchGate's website (*id.* ¶ 40). ResearchGate previously requested the Court's assistance in compelling discovery from Plaintiffs and respectfully requests the Court's intervention again now, because Plaintiffs have failed to produce multiple categories of relevant information.

The parties met and conferred on August 24 and 25, 2020. Plaintiffs still refuse to produce documents in response to several of ResearchGate's Requests for Production ("RFPs"). The following disputes are ripe for the Court's decision.

## II. Documents Plaintiffs Should Produce

### A. Responsive Documents That Hit on Search Terms

Plaintiffs have withheld certain responsive documents that hit on agreed search terms. For many of ResearchGate's RFPs, Plaintiffs had agreed to produce responsive documents based on the search terms the parties agreed on through mutual exchanges of proposed terms and several meet-and-confers earlier this year.[1] However, during and since the parties' last meet-and-confer on August 24 and 25, Plaintiffs made clear that they did *not* produce certain documents that were responsive to ResearchGate's RFPs and hit on ResearchGate's search terms; Plaintiffs have withheld responsive documents on the grounds, they say, of relevance, undue burden, and proportionality. Plaintiffs have not provided any authority for their approach—nor could they.

Plaintiffs' decision to withhold responsive documents is most apparent with respect to ResearchGate's RFP Nos. 1 and 2. In those RFPs, ResearchGate requested all documents relating to ResearchGate (RFP No. 1) and communications relating to ResearchGate, whether internal, among Plaintiffs, or with third parties (RFP No. 2). Plaintiffs agreed to search for and produce documents and to use "ResearchGate" and "RG" as search terms, but they have declined to produce the full scope of documents responsive to these requests. Plaintiffs explained during meet-and-confers that they withheld documents relating to ResearchGate that hit on those agreed search terms simply because *they* regard those documents as irrelevant.

ResearchGate has consistently opposed Plaintiffs' approach of unilaterally selecting for production only the documents they think are relevant. Plaintiffs maintained their approach, however, and they have refused to provide ResearchGate with their criteria for assessing relevance. They have mentioned examples of documents they have withheld. But when ResearchGate asked for a full list of the types of responsive documents Plaintiffs did not produce, Plaintiffs refused, saying that no such list existed and they were unwilling to create or otherwise provide one. Their position boils down to: Just trust us. This position lacks any legal justification. Relevance isn't for them alone to decide.

Following the parties August 24 and 25 meet-and-confers, ResearchGate emailed Plaintiffs to confirm whether Plaintiffs had withheld responsive documents on "relevance" grounds for any RFPs *other than* Nos. 1 and 2. Plaintiffs did not answer the question but disclosed that they also had withheld responsive documents on the grounds of undue burden and proportionality. ResearchGate again disagreed with this approach and again asked whether Plaintiffs have withheld responsive documents on relevance, burden, or proportionality grounds for any RFPs other than Nos. 1 or 2. Plaintiffs still refused to answer the question, asserting that the parties had "been through this many times, and a 100,000-foot level discussion after our meet and confers, and across the entirety of the requests, is unproductive."

---

[1] The RFPs for which Plaintiffs were to produce responsive documents based on search term hits are at least: Nos. 1-3, 15, 19-26, 28-29, 31, 34, and 47-50. For brevity, ResearchGate does not here describe each of those document requests but is willing and able to provide the Court with additional information about these requests and the documents they seek.

ResearchGate is at a loss as to the extent to which Plaintiffs have withheld responsive documents that hit on agreed search terms. ResearchGate respectfully requests the Court's assistance in compelling production of responsive documents. Specifically, Plaintiffs should be compelled to produce the full scope of responsive documents that hit on search terms, including but not limited to RFPs Nos. 1 and 2.

**B. Documents Relating to Works on ResearchGate's Website and How Plaintiffs Learned of Them**

In RFP Nos. 32 and 33, ResearchGate asked for documents and communications relating to the appearance of any work in suit on ResearchGate's website (No. 32) and documents and correspondence sufficient to show when and how Plaintiffs learned that the work in suit appeared on ResearchGate's website (No. 33). Plaintiffs have produced copies of articles that appeared on ResearchGate as well as log files showing when Plaintiffs viewed these articles. At best, this shows the appearance of the works in suit and *when* Plaintiffs viewed the article *on one occasion* (not necessarily when they learned that the article was on ResearchGate's website). But these documents certainly do not show the *how*—and this has been ResearchGate's focus, including during several meet-and-confers. ResearchGate has sought a specific category of information: documents or data sources showing Plaintiffs' processes (whether human or automated) for reviewing and possibly investigation works on ResearchGate website.

These documents are relevant to at least two aspects of the case. ResearchGate asserts under the DMCA the affirmative defense that it had no actual or "red-flag" knowledge that its activities were infringing. *See* 17 U.S.C. § 512(c)(1)(A)(i)-(ii); ResearchGate's Answer to Pls.' Compl. at 17-18, ECF No. 9. This means that ResearchGate intends to prove that it was not aware of facts or circumstances that, to a reasonable person, would have made it obvious that ResearchGate's activities were infringing. *See Mavrix Photographs, LLC v. Livejournal, Inc.*, 873 F.3d 1045, 1057-58 (9th Cir. 2017). As to Plaintiffs, they claim statutory damages, and among the factors to be considered in awarding any statutory damages are actual damages, the infringer's state of mind, and the conduct and attitude of the parties. *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 127 (2d Cir. 2014); *Disney Enters., Inc. v. Delane*, 446 F. Supp. 2d 402, 406 (D. Md. 2006). The requested documents are relevant to red-flag knowledge because they may show Plaintiffs' own uncertainty about authors' rights to share articles via the ResearchGate website and possibly different approaches Plaintiffs have taken with respect to those works and ResearchGate. The documents are relevant to damages because they would show the resources (or lack thereof) Plaintiffs dedicated to investigating works appearing on ResearchGate's website (damages) and their action (or inaction) upon discovery works on ResearchGate's website.[2]

Plaintiffs have refused to produce these documents, asserting in a blanket manner that the documents sought would be privileged. But they have not provided any particular grounds for privilege. Indeed, they have given no indication that they have even searched for or collected responsive documents.

[2] These documents also may be relevant to ResearchGate's statute-of-limitations and laches defenses, if they show that Plaintiffs investigated and discovered allegedly copyrighted works on ResearchGate's website but did nothing about them.

ResearchGate respectfully requests that Plaintiffs be ordered to produce documents responsive to these requests—namely, documents or data sources sufficient to show Plaintiffs' processes for reviewing and investigating works appearing on ResearchGate's website.

**C. Documents Relating to Mendeley and SSRN**

ResearchGate also has requested document discovery regarding Mendeley and SSRN. Both are websites owned by Plaintiff Elsevier that allow researchers to post their own work online; they are competitors of ResearchGate. To provide a brief summary of these entities:

- Elsevier describes Mendeley as an "academic social network that can help you organize your research, collaborate with others online, and discover the latest research" by "[f]ind[ing] relevant papers," among other things. About Mendeley, Elsevier, https://www.elsevier.com/solutions/mendeley (last visited Aug. 26, 2020). Elsevier acquired Mendeley in 2013.

- SSRN "is an open-access online preprint community," About SSRN, Elsevier, https://www.elsevier.com/solutions/ssrn (last visited Aug. 26, 2020), and an "eLibrary [which] provides 950,733 research papers from 503,172 researchers in more than 50 disciplines," SSRN, https://www.ssrn.com/index.cfm/en/ (last visited Aug. 26, 2020). Its database includes both abstracts and "full text papers." Browse eLibrary, SSRN, https://papers.ssrn.com/sol3/DisplayJournalBrowse.cfm## (last visited Aug. 26, 2020). Elsevier acquired SSRN in 2016.

ResearchGate has sought documents regarding the following topics. Elsevier has refused production in connection with all of them.[3] It has not claimed that it does not have these documents in its possession, custody, or control, but instead has said that ResearchGate's requests are overbroad, disconnected from the case, and present a disproportionate burden—without explaining why. Elsevier is wrong. And the requested documents are relevant for at least the reasons described below.

- The effect, if any, of ResearchGate on Mendeley and SSRN's businesses (RFP No. 53). This is relevant to damages because it would go to the alleged harm to Elsevier as a result of ResearchGate's conduct, or benefit to Elsevier as a result of sharing on these other websites that Elsevier owns. It also goes to willfulness because, if Elsevier decided to buy companies that currently or in the past have allowed users to upload full texts, previewed articles, or otherwise had policies similar to ResearchGate's, then that would support ResearchGate's position that its actions were reasonable and not willful. Willfulness may be at issue because, while ResearchGate does not believe it has infringed Plaintiffs' rights, if the trier of fact disagrees, then it will need to determine whether ResearchGate's conduct was willful to determine the appropriate amount of statutory damages. *See* 17 U.S.C. § 504(c)(2).

---

[3] Plaintiffs have agreed to produce only one type of information relating to Mendeley and SSRN: annual reports of Elsevier's parent company showing Elsevier's relationship to and ownership interests in Mendeley and SSRN (RFP No. 52).

- The reasons why Elsevier decided to purchase Mendeley and SSRN (RFP No. 54). This is relevant to damages, as described above, and to red-flag knowledge, because Elsevier's acquisitions of two companies that operate in the same space as ResearchGate would help to show that ResearchGate's activities were reasonable and not obviously infringing.

- Mendeley's and SSRN's understanding of the meaning of "self-archiving" (RFP No. 55). This is relevant to countering Elsevier's allegations that ResearchGate presented misleading information about self-archiving and relevant to red-flag knowledge. If Mendeley and SSRN understood self-archiving in a way similar to how ResearchGate has, then that would demonstrate that ResearchGate's statements were *not* misleading. As to red-flag knowledge, notably, SSRN's president in 2017 wrote about open access on an SSRN blog and described types of open access as "terribly confusing," Gregg Gordon, *More Is Simply More: Thoughts on Open Access*, SSRN Blog, http://ssrnblog.com/2017/10/22/more-is-simply-more-thoughts-on-open-access/ (Oct. 22, 2017) (last visited Aug. 26, 2020). That he (and probably others) at SSRN and Mendeley found open access confusing demonstrates the ambiguity in sharing policies and would support ResearchGate's no-red-flag-knowledge defense.

- Statements Mendeley and SSRN have made about self-archiving or SHERPA/RoMEO on their websites (RFP No. 56) and all other documents and communications regarding SHERPA/RoMEO (RFP No. 57). SHERPA/RoMEO is a website that provides information about publishers' open-access policies and provides colors (green, blue, yellow, and white) to signal an author's ability to archive their articles. These documents are relevant because Plaintiffs have asserted that ResearchGate has presented "false and misleading statements about self-archiving" based on SHERPA/RoMEO's analysis (Compl. ¶ 40, ECF No. 1), and to disprove these allegations, ResearchGate hopes to present evidence showing that there was no reason to question the reliability of SHERPA/RoMEO as a resource and that Plaintiffs themselves regarded it as accurate. Mendeley itself has pointed users to SHERPA/RoMEO as a way to determine whether they could post their work on Mendeley. Updated (and hopefully easier-to-understand) Terms of Use, Mendeley Blog, https://blog.mendeley.com/2013/09/27/just-a-few-words/ (Sept. 27, 2013) (last visited Aug. 26, 2020).

- Mendeley's and SSRN's copyright policies and practices, as well as their facilitation of users' uploading of and access to full texts (RFP Nos. 58-59, 62-64). This information is relevant to red-flag knowledge and to damages, as described above; *see also* Gordon *supra*.

- Elsevier's copyright enforcement efforts with respect to Mendeley and SSRN (RFP No. 60). This is relevant to damages and red-flag knowledge, as described.

- Data about Mendeley and SSRN users that these websites share with Elsevier (RFP No. 61). Like other categories, this too is relevant to damages and red-flag knowledge.

Elsevier should be compelled to produce the full scope of documents response to these requests about Mendeley and SSRN.

## III. Conclusion

ResearchGate respectfully requests that the Court issue an order requiring:

- Plaintiffs to produce all responsive documents that hit on search terms, including but not limited to all documents and communications relating to ResearchGate (RFP Nos. 1 and 2);

- Plaintiffs to produce documents sufficient to show Plaintiffs' processes (human or automated) for reviewing and investigating works appearing on ResearchGate's website (RFP Nos. 32 and 33); and

- Elsevier to produce:
  - all documents and communications relating to the effect of ResearchGate on Mendeley and SSRN's businesses (RFP No. 53);
  - documents sufficient to show the reasons why Elsevier decided to purchase Mendeley and SSRN (RFP No. 54);
  - all documents and communications regarding Mendeley's and SSRN's understanding of the meaning of self-archiving (RFP No. 55);
  - documents sufficient to show all statements Mendeley and SSRN have made about self-archiving or SHERPA/RoMEO on their websites (RFP No. 56) and all documents and communications regarding SHERPA/RoMEO (RFP No. 57);
  - documents sufficient to show Mendeley's and SSRN's copyright policies and practices (RFP No. 58);
  - documents sufficient to show all ways that Mendeley and SSRN have allowed or facilitated users' access to the full text of published journal articles (RFP No. 59);
  - documents sufficient to show Elsevier's copyright enforcement efforts with respect to Mendeley and SSRN (RFP No. 60);
  - documents sufficient to show each type of data about Mendeley and SSRN users that Mendeley or SSRN shares with Elsevier (RFP No. 61);
  - documents sufficient to show any feature on Mendeley's or SSRN's website that facilitates previews of published journal articles (RFP No. 62);
  - documents sufficient to show how published journal articles have been uploaded to Mendeley and SSRN (RFP No. 63); and
  - documents sufficient to show Elsevier's past and current policies and practices with respect to whether it permits named authors to upload published journal articles, pre-prints, or other full-texts to Mendeley or SSRN (RFP No. 64).

Respectfully submitted,

*/s/ Joseph C. Gratz*
Joseph C. Gratz

/s/ *Toyja E. Kelley*

Toyja E. Kelley (Federal Bar No. 26949)
SAUL EWING ARNSTEIN & LEHR LLP
500 E. Pratt Street, Suite 900
Baltimore, MD 21202-3133
410-332-8600
410-332-8862 (facsimile)
Toyja.kelley@saul.com

*Attorneys for ResearchGate GmbH*