# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
# SOUTHERN DIVISION

| | |
|---|---|
| AMERICAN CHEMICAL SOCIETY, ET AL.,<br><br>                Plaintiffs,<br><br>v.<br><br>RESEARCHGATE GMBH,<br><br>                Defendant. | Case No. 8:18-cv-03019-SAG |

## FINAL ORDER AND PERMANENT INJUNCTION

Plaintiffs American Chemical Society, Elsevier Inc., Elsevier Ltd., and Elsevier B.V. (collectively, "Plaintiffs" or "Publishers"), and Defendant ResearchGate GmbH ("Defendant"), through a request filed on September 15th, 2023 (the "Stipulation"), have indicated that they wish to resolve the above-captioned action (the "Action") without further litigation, and without any admission of fact, law, wrongdoing, or fault, as set forth below.

Having duly considered the Stipulation, and the proceedings in this Action, the Court hereby enters the following Final Order and Permanent Injunction ("Permanent Injunction") according to the following terms.

1. For purposes of this Permanent Injunction, capitalized words and phrases not otherwise defined shall have the meanings set forth below:

    a. "Acquisition" means (i) a merger or consolidation in which ResearchGate is a constituent party, (ii) the sale, transfer, or other disposition, in a single transaction or series of related transactions, by ResearchGate or any subsidiary of ResearchGate (taken as a whole), of all or the majority of the stock, equity, shares, or voting rights

of ResearchGate or its subsidiaries (taken as a whole), or (iii) the sale, conveyance, lease, transfer, exclusive license, or other disposition, in a single transfer or series of related transactions, by ResearchGate or any subsidiary of ResearchGate (taken as a whole), of all or the majority of the assets of ResearchGate or its subsidiaries (taken as a whole), except in the case of (ii) or (iii) where such sale, conveyance, lease, transfer, exclusive license, or other disposition is to a wholly owned subsidiary of ResearchGate.  Notwithstanding the foregoing, an Acquisition shall not include (x) a consolidation with a wholly owned subsidiary of ResearchGate; or (y) a merger effected exclusively to change the domicile of ResearchGate.

b. "Content" means any written or graphic content, including any article, book, publication, text, abstract, image, or data.

c. "Covered Works" means any and all Content (or portions thereof), whether now in existence or later created, regardless of media type, in which any of the Publishers or their affiliates owns or controls (in full or in part) an exclusive right under Section 106 of the U.S. Copyright Act or pursuant to the copyright laws of other countries or territories.  Covered Works include, but are not limited to, Content that contains a copyright notice, or © symbol, indicating a Publisher is the (sole or joint) copyright owner.  Covered Works include not just Content published in a journal (*e.g.*, a published journal article, version of record, or conference paper), but also versions of articles that have been accepted for publication (*i.e.*, an accepted manuscript) or undergone peer review but not yet assigned to a journal (*i.e.*, article in press).  Covered Works include any and all abstracts (or portions thereof) of a Covered Work.  Solely for purposes of this Permanent Injunction, and without prejudice to Publishers'

rights, whether under the U.S. Copyright Act or otherwise, all of which are expressly reserved, Covered Works do not include Preprints (*i.e.*, the author's own write-up of research results and analysis that has not been peer-reviewed, nor had any other value added to it by a publisher (such as formatting, copy-editing, technical enhancements, and the like)), or articles published under Creative Commons licenses.

d. "Enjoined Parties" means Defendant and its successors, assigns, officers, agents, servants, and employees, and those persons in active concert or participation with them who receive actual notice of this Permanent Injunction by personal service or otherwise.

e. "Filtered Content" means a Covered Work for which a Publisher provides ResearchGate with Reference Point(s) and which the Content Filter identifies or would identify as a Covered Work if the Content Filter were applied to that content.

f. "Identified Unauthorized Sites" means the sites, sources, and organizations identified pursuant to agreement between Plaintiffs and Defendant as a means for Defendant to avoid unauthorized copies of Filtered Content.

g. "Reference Point" means information a Publisher provides to ResearchGate to enable the identification of a Covered Work.

h. The "RG Site" means the website available at http://www.researchgate.net and https://www.researchgate.net, including any successor website, mirror, redirect or substantially comparable website or online site, application or platform that is owned or controlled by ResearchGate, whether now or in the future, and any and all related webpages and front-end and back-end systems, including the underlying databases, software, computers, computer servers, hardware, applications and/or systems.

  i. "Settlement Agreement" means the settlement agreement between Plaintiffs and Defendant resolving the Action and any side agreements related thereto.

  j. "Transacting Party" means any entity or person other than a Plaintiff that, as part of an Acquisition, (i) merges with ResearchGate or (ii) purchases, leases, or receives a conveyance, transfer, assignment, exclusive license, or other disposition, of all or the majority of the assets, stock, equity, shares, or voting rights of ResearchGate or its subsidiaries.

  k. "User" means any and all individuals who, now or in the future, access or use the RG Site, whether as a member or non-member, whether logged in or logged out.

  2. The Enjoined Parties shall implement and maintain a copyright filtering solution ("Content Filter") that is highly effective in preventing Filtered Content from being accessed, copied, displayed, distributed, made available, or otherwise used on or through the RG Site, pursuant to standards and procedures jointly developed by Plaintiffs and Defendant by agreement. The Permanent Injunction does not require that the Content Filter prevent named authors of Covered Works (as listed on those works) from privately storing on the RG Site the Covered Works they authored, provided that the Enjoined Parties restrict access, viewing, or other use solely to the author, and the Enjoined Parties restrict any sharing to a limited number of communications between the author and others, pursuant to standards and procedures jointly developed by Plaintiffs and Defendant by agreement.

  3. The Enjoined Parties are enjoined from engaging in any of the following without express written authority or license from the respective Publisher:

   a. Copying any Covered Work from any website, online location, or other source that ResearchGate has actual knowledge is owned or controlled by any Publisher

4

        (including, without limitation, www.elsevier.com, www.sciencedirect.com, and www.acs.org), or encouraging, assisting, or soliciting a third-party (including a User) to copy any Covered Work from such location or source;

    b.  Copying any Filtered Content from any website, online location, or other source, in any manner that results in Users being able to access, view, download, or distribute the Filtered Content;

    c.  Copying to or otherwise making accessible on or via the RG Site any Filtered Content in any manner for Users to access, view, download, or distribute;

    d.  Identifying or locating any Filtered Content and then encouraging, assisting, or soliciting a third-party (including a User) to copy to or otherwise make accessible on or via the RG Site that Filtered Content; or

    e.  Accessing, reviewing, analyzing, or otherwise using for any purpose any Filtered Content from Identified Unauthorized Sites.

4.    Beginning no later than December 31, 2023, the Enjoined Parties are enjoined, without express written authority or license from the respective Publisher, from accessing, reviewing, analyzing, or otherwise using for any purpose other than the operation of the Content Filter, including, without limitation, for artificial intelligence, text and data mining, or creation of derivative works, directly or indirectly, any Filtered Content that a User uploads, stores, or shares, pursuant to standards and procedures jointly developed by Plaintiffs and Defendant by agreement..

5.    The prohibitions set forth in Paragraphs 3 and 4 apply both to activity via manual means and to activity via software or other automated means.

5

6.       The Enjoined Parties are enjoined from engaging in any Acquisition with respect to subclause (i) of the definition of Acquisition in which ResearchGate as an entity ceases to exist without the surviving or resulting corporation (the "Survivor"):  (i) becoming bound by this Permanent Injunction solely with respect to the operation of the RG Site (including the provisions of this Paragraph); (ii) submitting to the jurisdiction and venue of this Court with regard to the Permanent Injunction solely with respect to the operation of the RG Site (including the provisions of this Paragraph); and (iii) filing a notice with the Court agreeing to (i) and (ii).  For avoidance of doubt, the obligations under this Permanent Injunction do not extend to the parent company or any affiliates of Survivor, other than when such parent or affiliates act in active concert or participation with Survivor pursuant to Fed. R. Civ. P. 65(d)(2)(c).  Any Acquisition with respect to subclause (i) of the definition of Acquisition in which ResearchGate as an entity ceases to exist that does not fully comply with this paragraph shall be voidable upon motion by Elsevier or ACS brought within 15 business days of the movant receiving actual notice of such Acquisition.

7.       The Enjoined Parties are enjoined from engaging in any Acquisition with respect to subclause (iii) of the definition of Acquisition without each Transacting Party:  (i) becoming bound by this Permanent Injunction solely with respect to the operation of the RG Site (including the provisions of this Paragraph); (ii) submitting to the jurisdiction and venue of this Court with regard to the Permanent Injunction solely with respect to the operation of the RG Site (including the provisions of this Paragraph); and (iii) filing a notice with the Court agreeing to (i) and (ii).  Any Acquisition with respect to subclause (i) of the definition of Acquisition in which ResearchGate as an entity ceases to exist and subclause (iii) of the definition of Acquisition that

does not fully comply with this paragraph shall be voidable upon motion by Elsevier or ACS brought within 15 business days of the movant receiving actual notice of such Acquisition.

8. The Enjoined Parties are enjoined from engaging in any Acquisition without fully complying with the change-of-control provisions to which Elsevier and Defendant have agreed in their Settlement Agreement ("Change of Control Provisions"). As Defendant has no authority to engage in an Acquisition without fully complying with the Change-of-Control Provisions, any Acquisition made without fully complying with the Change of Control Provisions shall be voidable upon motion by Elsevier brought within 15 business days of Elsevier receiving actual notice of such Acquisition.

9. Plaintiffs and Defendant have agreed that, upon entry of this Permanent Injunction, the case shall be closed, with prejudice, with each party to bear its own fees and costs.

10. The Settlement Agreement shall not be merged into or extinguished by entry of this Permanent Injunction.

11. Nothing in either the Stipulation or this Permanent Injunction grants any license, right, permission, consent, or authorization with respect to any of the Covered Works. Moreover, nothing contained in either the Stipulation or this Permanent Injunction extends to, limits, or waives any of Plaintiffs' rights, claims, or remedies with respect to any events, actions, occurrences, or infringement occurring after the date that this Permanent Injunction is entered.

12. Defendant has consented to continuing jurisdiction of the Court for purposes of enforcement of the Permanent Injunction. Defendant has irrevocably and fully waived and relinquished: (i) notice of entry of the Permanent Injunction; (ii) notice and service of the entered Permanent Injunction; (iii) any argument that venue or jurisdiction by this Court is

improper or inconvenient; and (iv) any and all right to appeal the Permanent Injunction, to have it vacated or set aside, or otherwise to attack it in any way, directly or indirectly, including its validity or enforceability.

13. The Court shall maintain continuing jurisdiction of this Permanent Injunction for the purpose of enforcing the Permanent Injunction.

14. This Permanent Injunction shall continue in full force and effect for a period of ten years from the date this Permanent Injunction is entered and thereafter automatically expire.

SO ORDERED, this <u>15th</u> day of September, 2023.

/s/
The Hon. Stephanie A. Gallagher
United States District Judge